Robert J. BOSTIC, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
REVENUE, CHILD SUPPORT EN-
FORCEMENT DIVISION, Appellee.

No. S–8163.

Supreme Court of Alaska.

Dec. 4, 1998.

Lynn E. Levengood, Downes, MacDonald & Levengood, P.C., Fairbanks, for Appellant.

Scott Davis, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE and BRYNER, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Procedural due process demands that a party affected by government action be given notice and an opportunity to be heard before being deprived of a property interest. In this case, the Child Support Enforcement Division (CSED) failed to afford either of these aspects of due process to Robert J. Bostic when deciding the amount of his child support obligation. Because Bostic was deprived of his right to a full and fair opportunity to present evidence of his actual income, we reverse and remand for such a hearing.

## II. FACTS AND PROCEEDINGS

While Robert J. Bostic was incarcerated at the Spring Creek Correctional Center in Seward in 1991, CSED set his child support obligation at fifty dollars per month. In 1994, after he had been released from Spring Creek, CSED initiated a three-year review of its support order. It sent Bostic a "Notice of Review of Administrative Support Order and Notice of an Informal Conference," which required Bostic to produce a variety of income documents, including tax returns, W–2 statements, and check stubs. Because Bostic had never found regular employment after his release from prison, he did not have many of the requested documents. But he did complete the income affidavits enclosed with the CSED notice and returned these to CSED within the required time period.

Although CSED deemed Bostic's submission "non-responsive" because he had failed to enclose all of the requested income documents, it never informed him of the problem nor did it provide any direction as to what alternative information would be acceptable. And although the notice that CSED sent to Bostic indicated that an informal conference would be held on July 15, 1994, CSED never held such a conference; instead, on January 31, 1995, it conducted a "file review." Due to its perception that Bostic had failed to respond adequately to its notice and request for income information, CSED imputed to Bostic the average yearly wage of a fifty-year-old Alaskan male—$40,536—to arrive at his new monthly support obligation of $933 for four children. At no time preceding the file review did CSED inform Bostic that his response was substantively lacking or that the date of the review proceeding had been changed.

Bostic filed a notice of appeal in February 1995. Prior to the formal hearing on the appeal, CSED notified Bostic that he would be permitted to document his income by submitting a letter from the IRS stating that he had not filed a tax return in previous years. Bostic submitted such a letter as well as additional income documentation.

At the formal hearing, held in April 1995, Hearing Officer Diane Colvin remarked that Bostic had "established that there wasn't specific notice" of the file review, and that the purpose of the remainder of the hearing therefore would be to "establish the facts about [Bostic's] income" in order to arrive at the correct calculation of his support obligation.

At the hearing Bostic testified that he had again been incarcerated for two months in 1993 and three months in 1994. He stated that he submitted all income information available to him. He explained that he did not have a permanent job and earned money doing odd jobs, such as fixing cars and shov-

eling snow. Bostic also told the hearing officer that some of his income was earned under the name "Jimmie Dale," the name by which he was raised.

After the parties' closing arguments, but before the hearing ended, the hearing officer asked Bostic whether he was looking for work. Bostic replied that he was seeking work but that his criminal history made it difficult for him to find employment. When asked what kind of jobs he had held in the past, Bostic responded, "Just labor jobs ... you know, I'm a pretty good mechanic and sometimes I can get some mechanic work. Things have been real slow up here."

The hearing officer left the record open to allow CSED to submit a recalculation of Bostic's support obligation, based solely on the information adduced at the hearing. When Bostic's attorney asked the hearing officer whether CSED would be permitted to submit additional evidence of Bostic's income, she reassured him that she would be basing her decision "on the information that was presented today by both parties and [CSED] is going to submit a recalculation based on the Division's determination of what [Bostic's] income is, using his affidavits and ... the other information presented today."

But on May 1, 1995, Child Support Enforcement Officer David Peltier filed a submission alleging that: (1) Bostic had used up to seven aliases, three dates of birth and two Social Security numbers; (2) Bostic was a licensed gold mine operator with operations in Ruby; (3) Bostic was leasing a number of mining claims; (4) Bostic had been operating a mining business for the previous four years; and, (5) Bostic would not return from the mining site until October 1995. In response, Bostic filed an affidavit stating that "[a]ll equipment used in the mining operation is leased and/or not owned by me" and that there were "negative profits from all mining activities such that the previous income statements are accurate."

The hearing officer issued a final child support decision on July 26, 1995. Despite her statements at the hearing that Bostic had received inadequate notice of the file review, the hearing officer held that issuance of an informal conference decision after the

file review, without Bostic's participation, was not unreasonable because Bostic "never made any affirmative attempt to participate in the process." The hearing officer then concluded that the agency was justified under its regulations in imputing to Bostic the average wage of a fifty-year-old Alaskan male. In light of CSED's newly submitted evidence, the hearing officer found that Bostic was not a credible witness. Finally, the hearing officer resolved an issue that was not before her at the hearing—she found that Bostic was voluntarily underemployed:

> Even if the income affidavits provided by the Obligor are accepted as accurately reflecting the Obligor's income, the conclusion remains that the Obligor in this appeal is voluntarily underemployed. Income is therefore imputed to him, using the standard employed by the Division, the average wage for a 50 year old male. If the Obligor were fully utilizing his skills as a mechanic, he would, with experience, be capable of earning $40,536 per year....

On that basis, the hearing officer affirmed CSED's decision to increase Bostic's monthly support obligation to $933.

On appeal, the superior court rejected Bostic's due process arguments and affirmed all of the hearing officer's findings. The superior court held open its final decision on the proper amount of child support, remanding the case to CSED for adjustment of its calculations to reflect the period of time during which Bostic had been incarcerated.

On remand from the superior court, CSED found that Bostic had been placed in Northstar Center, a halfway house, during portions of 1993 and 1994. There, he was expected to perform community service five days a week and continue to look for employment. Based on this information, CSED considered Bostic never to have left the workforce, and it resubmitted the $933 a month support calculation to the superior court. Bostic challenged this recalculation and submitted additional evidence and affidavits outlining the dates he was at Northstar and his earnings during that time period. On April 18, 1997, the superior court issued a final decision, adopt-

ing CSED's calculation of $933 per month for child support. Bostic appeals.

## III. DISCUSSION

### A. Standard of Review

■ We will not defer to the decision of a superior court acting as an intermediate court of appeal.[1] Instead, we "independently review the merits of an administrative determination."[2]

■ We will substitute our judgment for that of the agency where the case concerns "statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience."[3] We also exercise our independent judgment when reviewing issues involving constitutional interpretation.[4] Under this standard, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[5]

■ We review an agency's factual determinations under the "substantial evidence" test.[6] We have defined substantial evidence to be

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The [agency's] decision need not be the only possible solution to the problem, for it is not the function of the court to reweigh the evidence or choose between competing inferences, but only to determine whether such evidence exists.[7]

### B. Bostic's Appeal Was Timely.

Before addressing the merits of Bostic's appeal, we first consider the State's contention that Bostic's appeal was not timely. On August 22, 1996, the superior court issued its

first opinion, affirming CSED's decision in part but remanding for a recalculation reflective of Bostic's incarceration. Although Bostic filed a timely notice of appeal of this decision on September 23, 1996, the appellate court clerk's office sent Bostic a notice that his appeal was not ripe for review because the superior court's order "d[id] not appear to be final." Bostic then waited for CSED to recalculate his support obligation and for the superior court to reach its final decision on April 18, 1997, before again appealing in a timely manner.

■ The State argues that the clerk's refusal to docket Bostic's first appeal of the superior court's August 1996 order was error and that Bostic's failure to seek review of the appellate clerk's decision should estop him from appealing the superior court's later order. The State also faults Bostic for failing to file a petition for review of the superior court's August 1996 order.

The State's arguments are meritless. Although Bostic could have sought further review of the clerk's order, he was not obligated to do so. Furthermore, Appellate Rule 402 does not "require a litigant to petition for review of non-appealable orders."[8] We agree with Bostic that in light of his filing two timely notices of appeal, adopting the State's view would result in "the ultimate injustice."

### C. CSED Violated Bostic's Due Process Rights.

Bostic argues that CSED's recalculation of his child support obligation is invalid because he was denied due process of law at every turn of the three-year review process. The crux of Bostic's argument is that CSED

1. See Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992).

2. Id.

3. Kelly v. Zamarello, 486 P.2d 906, 916 (Alaska 1971).

4. See City of North Pole v. Zabek, 934 P.2d 1292, 1297 n. 5 (Alaska 1997).

5. Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

6. Jager v. State, 537 P.2d 1100, 1107 (Alaska 1975).

7. Interior Paint Co. v. Rodgers, 522 P.2d 164, 170 (Alaska 1974) (footnotes and internal quotations omitted).

8. In the Matter of the Estate of McCoy, 844 P.2d 1131, 1136 n. 6 (Alaska 1993) (holding that appellee's waiver argument on this ground was meritless); see also City of Juneau v. Thibodeau, 595 P.2d 626, 629 (Alaska 1979) (holding that when a superior court reverses and remands an administrative decision, a party may invoke this court's discretionary review jurisdiction under Appellate Rules 23 and 24(a) (currently Rule 402)).

failed to provide him adequate notice of the proceedings and did not allow him to meaningfully participate in either an informal conference or the formal appeal. CSED has elected not to address the merits of Bostic's appeal, choosing instead to make only the argument, discussed above, that Bostic's appeal was untimely. We agree with Bostic that CSED failed to provide the constitutional safeguards required under the Alaska Constitution.[9]

"Due process of law requires that before valuable property rights can be taken directly or infringed upon by governmental action, there must be notice and an opportunity to be heard."[10] When a party raises a due process claim, we first must determine "whether there is a 'deprivation of an individual interest of sufficient importance to warrant constitutional protection.'"[11] We conclude that when the State seeks to increase child support, "a significant property interest is often at stake."[12]

Due process is a flexible concept that requires procedural protections as the particular situation demands.[13] We therefore evaluate the "entire set of safeguards" that were provided by CSED in its file review and formal hearing process.[14]

1. *CSED denied Bostic adequate notice and an opportunity to participate in the informal conference.*

■ The hearing officer's decision excused CSED's failure to allow Bostic to appear in person at the informal conference based on a finding that he was unresponsive to CSED's three-year review notice and that he failed to make "any affirmative attempt to participate in the process." But this clearly was not the case. Bostic responded to the notice in a timely manner, and if CSED considered his submissions to be deficient, it neither informed him of the problem nor did it explain what documents could be substituted for the tax returns or W-2s. CSED never gave notice to Bostic that it was planning to conduct a file review on January 31, 1995.

Although CSED's regulations provide that an informal conference may be "conducted in person, through correspondence, or by telephone,"[15] the proceeding must allow "the administrative authority to examine both sides of the controversy" in order to "protect the interests and rights of all who are involved."[16] Where a proceeding is not conducted in person, due process envisions an exchange of information, not unilateral action by the government. We have previously held that "'fairness can rarely be obtained by secret, one-sided determinations of facts decisive of rights.'"[17]

Additionally, we conclude that CSED failed to make reasonable efforts, as required by its own regulations,[18] to obtain the information necessary to make a support calculation before imputing income to Bostic. CSED claimed that it sought the missing

---

**9.** Alaska Const. art. I, § 7 provides:

No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

**10.** *Frontier Saloon, Inc. v. Alcoholic Beverage Control Bd.*, 524 P.2d 657, 659 (Alaska 1974) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

**11.** *Herscher v. State, Dep't of Commerce*, 568 P.2d 996, 1002 (Alaska 1977) (quoting *Nichols v. Eckert*, 504 P.2d 1359, 1362 (Alaska 1973)).

**12.** *In re Marriage of McLean*, 132 Wash.2d 301, 937 P.2d 602, 607 (Wash.1997); *cf. Moody v. Comm'r, Dep't of Human Servs.*, 661 A.2d 156, 158 (Me.1995).

**13.** *See Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Amerada Hess Pipeline Corp. v. Alaska Pub. Util. Comm'n*, 711 P.2d 1170, 1178 (Alaska 1986).

**14.** *Amerada Hess*, 711 P.2d at 1178.

**15.** 15 Alaska Administrative Code (AAC) 05.020 (1998); *see also* 15 AAC 125.020(c) (1994).

**16.** *Zabek*, 934 P.2d at 1298 (quoting *Nichols v. Eckert*, 504 P.2d 1359, 1365 (Alaska 1973)).

**17.** *City of Homer v. Campbell*, 719 P.2d 683, 685 (Alaska 1986) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).

**18.** 15 AAC 125.015 provides in relevant part:

If the agency makes a reasonable but unsuccessful effort to obtain necessary financial in-

income information through a computer database, but it never attempted to contact Bostic or inform him that it believed his documentation was insufficient. Given that Bostic was in the best position to provide the information, we consider CSED's failure to contact him at anytime between July 10, 1994 and January 31, 1995 to have been unreasonable. We therefore conclude that CSED's substitution of a "file review" for the informal conference and its decision to impute income to Bostic without providing him an opportunity to be heard violated Bostic's due process rights.

2. *The formal hearing did not cure the constitutional infirmities of the "file review" process.*

■ We have held that a failure to afford due process may sometimes be cured by a subsequent hearing in which due process is provided.[19] But here, we conclude that the hearing officer once again violated Bostic's due process rights at the appeal hearing by improperly basing her decision on evidence that was not in the record at the close of the hearing.

■ The purpose of the appeal of CSED's file review was for Bostic to have an opportunity to prove that CSED's support calculation was incorrect because his financial circumstances were "not as the agency ha[d] determined."[20] At the hearing, Bostic testified that he had submitted all the documents that he possessed. The hearing officer seemed to agree during the hearing that "there wasn't actual notice" for the file review and that Bostic's attorney had "established that [the file review decision] was probably not correct." The hearing officer stated that the purpose of the remainder of the hearing was to "establish today [Bostic's] income so that an accurate calculation can be made." At the conclusion of the hearing,

Bostic's attorney asked whether new information would be allowed into the record following the hearing. The hearing officer responded:

> I will be basing my decision *on the information that was presented today* by both parties and [CSED] is going to submit a recalculation based on the Division's determination of what [Bostic's] income is, using the affidavits and, as I stated earlier, the *other information presented today.*

(Emphasis added.) Thus, Bostic and his counsel were left with the impression that the record was left open solely to allow CSED to submit the amount of the obligation based on Bostic's testimony.

But CSED supplemented the record on May 1, 1995 with a letter alleging that Bostic had been operating gold mining claims under a number of aliases. Without reopening the hearing evidence or giving Bostic a full and fair opportunity to rebut CSED's allegations, the hearing officer used this information as the basis of her decision to impute income to Bostic, holding that he had not been forthcoming with all pertinent income information, and that his earlier testimony was not credible. Yet, Bostic volunteered in his original income affidavits of July 1, 1994 that he earned approximately $12,000 from piece work and gold mining activities in 1993.

■ The hearing officer also failed to provide Bostic with notice that voluntary underemployment[21] would be an issue at the hearing. Yet, the hearing officer based her decision to impute income to Bostic upon her conclusion that Bostic had the necessary skills to be employed full-time as a mechanic. Bostic was never given an opportunity to respond to the issue of voluntary underemployment. And although Bostic testified at the hearing that he was "a pretty good mechanic," this evidence alone cannot sup-

---

formation from the obligor ... or if the obligor ... provides false information to the agency, the monthly support obligation will be determined in an amount necessary to support the children.

**19.** *See, e.g., McMillan v. Anchorage Community Hosp.,* 646 P.2d 857, 866–67 (Alaska 1982).

**20.** 15 AAC 125.050(3).

**21.** Alaska Civil Rule 90.3 permits income imputation upon a finding that an obligor has voluntarily reduced his or her income. The determination is based upon an evaluation of "the parent's work history, qualifications and job opportunities." Alaska R. Civ. P. 90.3 commentary III.C.

port the hearing officer's finding that Bostic had the skills or ability to work as a full-time mechanic, that such jobs were available, or that he could earn over $40,000 a year in such a position.

We have previously held that a litigant had "ample opportunity to be heard" where he was afforded an informal hearing, a formal conference before a hearing examiner, an appeal to the superior court, and an appeal to this court.[22] But in the present case, CSED hindered Bostic's attempts to present his side of the story, thus denying him due process of law. We vacate CSED's decision to increase Bostic's child support to $933 a month and remand for a full hearing to determine Bostic's obligation.

## IV. CONCLUSION

Because CSED denied Bostic due process of law at both the initial file review and the formal hearing, we VACATE its calculation of Bostic's support obligation and REMAND to permit CSED to conduct a full hearing consistent with this opinion.

**22.** *Agen v. State, Dep't of Revenue,* 945 P.2d 1215,   1219–20 (Alaska 1997).