John M. NUNLEY, Appellant,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION (CSED), Appellee.

No. S–11030.

Supreme Court of Alaska.

Oct. 8, 2004.

John Nunley, pro se, Wasilla.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

John Nunley appeals from an administrative child support decision issued by the Department of Revenue finding that he is voluntarily underemployed and ordering him to pay $209 per month to support his child. The superior court upheld the agency's decision on direct appeal. Because substantial evidence supports the finding that Nunley is voluntarily underemployed, and because the department imputed a reasonable annual income to Nunley to determine his child support obligation, we affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

John Nunley and his wife, Vansia Nunley, are the parents of Morgan Nunley, born April 20, 1989. John was incarcerated in December 1989, and Vansia began receiving public assistance for Morgan that same month. The Child Support Enforcement Division (CSED) opened a child support case for the family and served Nunley with an administrative child support order to reimburse the state $752 per month for Morgan's support. Nunley appealed the order by requesting an informal conference with CSED. In his request, Nunley informed CSED that he had been incarcerated since December 7, 1989 and that he had no assets. After a

telephonic conference on May 2, 1990, CSED reduced Nunley's monthly obligation to $50.

In June 1992 Vansia gave birth to another child, Kiana. Because the Nunleys were married at that time, John was presumed to be Kiana's father as a matter of law.[1] In July 1994 CSED issued a modified child support order requiring Nunley to support Kiana and increasing the required support to $282 per month. This amount was based upon an annual income of $15,010, which was extrapolated from Nunley's reported earnings for the first quarter of 1994. Nunley appealed the revised order by requesting an informal conference with CSED, which was held on September 8, 1994. The informal conference officer, Chris Berg, upheld the modified order, but he did not issue a written final decision as required by department regulations[2] or notify Nunley of his right to appeal to a formal administrative hearing.[3] The only record of this meeting consists of brief notes in CSED's computerized case management system. According to these notes, Nunley informed Berg that he quit his job after CSED sent a withholding order to his employer. Nunley also refused to provide any information to CSED, threatened to leave the state if CSED attempted to locate him, and claimed that all of his assets were in other people's names so that CSED could not collect from him.

After Nunley's driver's license was suspended in 1997 for non-payment of child support,[4] he administratively appealed the suspension. In a separate action in January 1998, Nunley moved to vacate the administrative child support order pursuant to AS 25.27.195(b),[5] which allows CSED to vacate a support order based upon a default amount rather than an obligor's actual ability to pay. He claimed that he had been living at or

---

1. *See* AS 18.50.160(d) (presumption of paternity applies to mother's husband at time of birth). It was later proven that Nunley is not Kiana's father, so support for Kiana is not an issue in this appeal.

2. *See* former 15 Alaska Administrative . Code (AAC) 05.020 (1994) (review officer shall promptly issue written decision).

3. 15 AAC 05.030 (describing process to request formal agency hearing).

4. CSED has authority to suspend a person's driver's license for nonpayment of child support. AS 25.27.246.

5. This statute provides that "[u]pon the motion of an obligor, the agency may, at any time, vacate an administrative support order issued by the agency ... that was based on a default amount rather than on an obligor's actual ability to pay."

below the poverty line for several years and that CSED was requiring support in excess of his ability to pay. In September 1998 the agency responded with a letter explaining that the order was based upon Nunley's demonstrated ability to pay.

Nunley treated this letter as a denial of his administrative appeal and he appealed the support order to the superior court in Palmer on October 23, 1998. CSED opposed the motion as premature because Nunley had not exhausted his administrative remedies, and it asked the superior court to dismiss the appeal and require Nunley to seek a formal hearing from the Department of Revenue. The department indicated that Nunley retained the right to an administrative appeal because he had not been notified in writing of his right to appeal from the 1994 informal conference. Because Nunley had not appealed CSED's order to a formal administrative hearing, there was no official administrative record for the court to review on appeal. Notwithstanding the lack of an administrative record, Nunley filed a motion to proceed with the appeal in November 1999, appending his own copy of his CSED file. The superior court granted Nunley's motion on March 22, 2000.

Nunley later decided to pursue an administrative appeal, and he requested a formal hearing before the Department of Revenue on December 4, 2000 and withdrew his appeal to the superior court on December 5, 2000. Prior to the formal hearing, CSED conducted a paternity test to determine whether Nunley was the father of Kiana. The test showed that he was not Kiana's father and the department determined that Nunley had no duty to provide for her support. In preparation for the formal hearing, CSED submitted a summary of the issues on appeal, the superior court record, and a statement explaining why Nunley retained the right to an administrative appeal so long after the informal hearing. These materials, which included an affidavit from Berg explaining his notes from the 1994 informal conference, were provided to Nunley and his counsel. In the case overview, the department argued that Nunley "was and is volun-

tarily and unreasonably un/underemployed," that $15,010 was a reasonable estimation of his potential income based upon his actual earnings in the first quarter of 1994, and that he should pay $209 per month in support for his child, Morgan. The formal hearing was held on June 28, 2001 before Revenue Hearing Examiner Kay L. (Katy) Howard. Nunley attended this hearing with his attorney.

As the party attacking the child support determination, Nunley bore the burden of proving, by a preponderance of the evidence, that the department's income calculations were incorrect.[6] Both CSED and Nunley offered opening statements focusing on the primary issue of whether Nunley was capable of earning an income sufficient to pay $209 per month in child support. Nunley testified that after his release from prison he worked seasonally as a laborer on the farm of a family friend, earning between $5 to $8 per hour. He claimed that although he was a certified welder, his skills were out-of-date and he was unable to find employment in this field. He testified that he worked as a construction laborer for several months in 1993–94, but that he was laid off in March or April 1994. It was upon the basis of this employment that CSED extrapolated an annual income of $15,010.

Nunley denied that he told Informal Hearing Officer Berg that he had quit this job to avoid paying child support, and claimed instead that Berg had either misunderstood him or lied. On cross-examination he admitted that he had made only minimal effort to secure full-time employment since 1994, applying for two to three jobs per year, but he claimed that no employers (except his family friends, who provided seasonal employment) would hire him due to his criminal background. He acknowledged that he lived with his mother and his girlfriend, both of whom gave him money and paid for his living expenses, that he frequently used a car owned by his mother and owned a motorcycle registered to his girlfriend, and that he spent his free time helping his girlfriend by cutting firewood, caring for her horses, and baling hay.

---

6. 15 AAC 05.030(h).

Hearing Examiner Howard issued a final decision on July 31, 2001. She noted that child support can be based upon an obligor parent's potential income if a finding is made that he or she is voluntarily and unreasonably underemployed, and she articulated the legal standard for making such a determination. She found that Nunley was underemployed as a result of "purely personal choices" rather than "economic factors" and that $15,010 was the best estimate of his potential income. She based her decision primarily upon Berg's entry in the CSED case management system after his 1994 informal conference with Nunley and an affidavit he submitted regarding that meeting. She found that Nunley's description of this meeting was not credible, noting that in the absence of any evidence to support Nunley's claim, she would "not enter a finding that a state employee acted dishonestly in carrying out his official duties many years ago."

Howard commented that other evidence in the record supported the finding that Nunley was voluntarily underemployed, particularly the fact that he had applied for only one or two jobs per year over a seven-year period. Howard noted that the financial support of Nunley's mother and girlfriend allowed him to remain underemployed since both provided him with a place to stay, purchased food for him, and paid for his living expenses. She also found Nunley's ownership of a motorcycle registered to his girlfriend to be consistent with Berg's notes that Nunley had threatened to hide his assets to prevent collection of child support. Based upon the evidence as a whole, she found that Nunley should pay child support for Morgan in the amount of $209 per month, and she affirmed the department's 1994 child support determination.

Nunley filed a motion for reconsideration on August 9, 2001 which was denied by Deputy Commissioner of Revenue Larry Persily on August 21, 2001. Persily found nothing to indicate that the decision was based on any errors of fact, and he noted that an annual income of $15,010 per year was based on full-time employment at a rate of $7.22 an hour, a modest wage for a "50–year–old worker with reasonable skills." He commented that while "Mr. Nunley has made a personal choice to live without full-time employment, . . . it is unreasonable for his child to live without full-time financial support from his father." Persily concluded that "[i]f, as Mr. Nunley states, he has chosen a career as a seasonal farm laborer, then perhaps he needs to add to his income by finding employment during the rest of the year. Civil Rule 90.3 does not allow for a child support obligation to be based solely on a parent's seasonal income just because he or she has chosen not to seek year-round employment."

Nunley appealed to the superior court on September 19, 2001, claiming that the support award was based upon an unreasonable estimate of his earning potential and that it should have been based upon his reported wages as a farm laborer. On November 18, 2002 Nunley moved for an order compelling CSED to release his suspended driver's license. The superior court affirmed the formal hearing decision on February 28, 2003, holding that the factual findings were supported by the record and that Hearing Examiner Howard applied the correct legal standard to determine that Nunley was voluntarily and unreasonably underemployed. On the same day, the superior court denied Nunley's motion to release his driver's license. Nunley appeals both decisions.

## III. STANDARD OF REVIEW

When the superior court acts as an intermediate court of appeal, we directly review the underlying administrative decision using our independent judgment.[7] An agency's factual findings are reviewed under the "substantial evidence test."[8] Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[9] We will not evaluate the strength of the evidence but only note

7. *Crivello v. State*, 59 P.3d 741, 744 (Alaska 2002).

8. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

9. *Id.* (quoting *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963)).

its presence.[10] We apply our independent judgment to questions of law that do not implicate agency expertise.[11]

## IV. DISCUSSION

■ Nunley raises eleven points on appeal, seven of which variously restate his primary argument that CSED erred in finding that he was voluntarily and unreasonably underemployed and in setting his support obligation at $209 per month. He claims that he faces limited employment opportunities due to his criminal background, which requires registration as a sex offender; that he has no control over who hires him and at what wage; and that the support award was not based upon his demonstrated ability to pay. For the reasons discussed below, we reject Nunley's arguments and affirm the agency's decision. Nunley also alleges various errors by the superior court, claiming that it incorrectly applied case law defining voluntary underemployment, that it lacked a factual basis for its findings, and that its decision intentionally omitted the procedural history of this case. Since we independently review the department's decision, and since these alleged errors relate to the factual and legal sufficiency of CSED's determination that Nunley was voluntarily underemployed, it is unnecessary to separately address these alleged errors by the superior court.[12] Nunley's claim that CSED erred by suspending his license during the pendency of his appeal is mooted by our decision today which concludes his appeal.

**A. The Department of Revenue Correctly Found that Nunley Is Voluntarily and Unreasonably Underemployed.**

■ Nunley argues that he is not voluntarily underemployed and that CSED is requiring him to pay child support in excess of his actual ability to pay. Because this court "will not relieve a noncustodial parent from his child support obligations absent an affirmative showing that the obligor parent cannot meet this obligation,"[13] Nunley bears the burden of proving that he cannot pay $209 per month to support his child.

Parents have both a common law and a statutory duty to support their children.[14] A child support award is based upon a parent's total income and the number of children that must be supported,[15] and the support amount can be based upon a parent's potential income if he or she is found to be voluntarily and unreasonably unemployed or underemployed.[16] A calculation of potential income must be based upon the parent's work history, qualifications, and job opportunities.[17] A parent will be found to be voluntarily unemployed or underemployed if he or she has engaged in "voluntary conduct for the purpose of becoming or remaining unemployed" or underemployed.[18] The key inquiry is whether the lack of employment is the result of "economic factors" or of "purely personal choices."[19] Unemployment or underemployment can be found to be voluntary even absent a finding that the parent is acting in bad faith to purposefully avoid a child sup-

**10.** *Id.*

**11.** *Alaska Ctr. for the Env't v. State,* 80 P.3d 231, 236–37 (Alaska 2003); *Palmer v. Municipality of Anchorage, Police & Fire Ret. Bd.,* 65 P.3d 832, 837 (Alaska 2003).

**12.** *See VECO Int'l, Inc. v. Alaska Pub. Offices Comm'n,* 753 P.2d 703, 708 (Alaska 1988) (holding that this court directly reviews merits of administrative determination, except to extent that superior court held supplemental evidentiary proceedings; and noting that petitioner must demonstrate error by agency, not superior court).

**13.** *Kowalski v. Kowalski,* 806 P.2d 1368, 1371 (Alaska 1991) (quoting *Houger v. Houger,* 449 P.2d 766, 769–70 (Alaska 1969)).

**14.** AS 25.20.030; *Matthews v. Matthews,* 739 P.2d 1298, 1299 (Alaska 1987) (superseded by rule on other grounds, as recognized in *Vachon v. Pugliese,* 931 P.2d 371 (Alaska 1996)).

**15.** Alaska R. Civ. P. 90.3(a).

**16.** Alaska R. Civ. P. 90.3(a)(4); 15 AAC 125.020(b).

**17.** *Id.*

**18.** *Bendixen v. Bendixen,* 962 P.2d 170, 172 (Alaska 1998).

**19.** *Vokacek v. Vokacek,* 933 P.2d 544, 549 (Alaska 1997).

port obligation,[20] because "the relevant inquiry under Civil Rule 90.3 is simply whether a parent's current situation and earnings reflect a voluntary and unreasonable decision to earn less than the parent is capable of earning." [21]

In determining that Nunley was voluntarily underemployed, Revenue Hearing Officer Howard relied upon Informal Hearing Officer Berg's entry in CSED's computerized case management system summarizing his meeting with Nunley. According to this entry, Nunley claimed that he quit his construction job after the state sent his employer a withholding order, he refused to provide information to CSED, he threatened to leave the state to avoid paying child support, and he admitted to owning assets registered in the names of other people. During the formal hearing, Nunley claimed that the statements ascribed to him by Berg were "a fabrication," but Nunley's counsel also acknowledged that Berg might have "misinterpreted" some of Nunley's comments. In support of his claim that he was unable to pay $209 in monthly child support, Nunley submitted evidence regarding his employment and earnings history. Revenue Hearing Officer Howard found that Nunley's claims lacked credibility, particularly in light of evidence showing that he owned a motorcycle that was registered in his girlfriend's name, that his mother and girlfriend paid for many of his living expenses, and that he had applied for very few jobs since 1994.

■ Nunley attacks the department's reliance on Berg's notes from the informal conference because he alleges that they omit evidence demonstrating that he is not voluntarily underemployed, they misrepresent his statements about his willingness to support his son, and they provide an insufficient factual basis to support Howard's finding of voluntary underemployment. We agree that Berg's five-sentence summary of his meeting

with Nunley is an insufficient basis upon which to find that Nunley is voluntarily and unreasonably underemployed, and we are also troubled by Howard's unquestioning reliance upon Berg's notes from the informal conference. If Berg's notes provided the only evidence to support the agency's findings we would reverse and remand for a new hearing. But Howard based her decision upon other evidence that Nunley was voluntarily underemployed, and this evidence is substantial.

■ Our concern regarding Howard's reliance upon Berg's notes is based on Howard's statement, in response to Nunley's claims that Berg had either misinterpreted or misrepresented his comments, that "absent evidence sufficient to establish [Nunley's] claim is more likely than not true, I will not enter a finding that a state employee acted dishonestly in carrying out his official duties many years ago." While it is appropriate to presume that state employees have properly discharged their official duties,[22] such a presumption is rebuttable.[23] The paucity of the written record from the informal hearing, combined with Berg's failure to issue a written decision or notify Nunley of his right to appeal, cast doubt upon the reliability of these notes and it was error to rely upon them so heavily. Nonetheless, in light of Howard's specific finding that "[o]ther evidence in the record supports the finding that Mr. Nunley was, and is, voluntarily and unreasonably underemployed," we hold that this error was harmless.[24]

■ The evidence of Nunley's voluntary underemployment was substantial. His testimony at the formal hearing demonstrates that he is capable of performing a wide range of physical labor, including repairing equipment, loading and driving trucks, operating farm machinery, stacking vegetables, cutting firewood, feeding horses, grading potatoes, and baling hay, not to mention performing construction labor. Moreover, that testimo-

**20.** *Kowalski v. Kowalski,* 806 P.2d 1368, 1371 (Alaska 1991).

**21.** *Beaudoin v. Beaudoin,* 24 P.3d 523, 528 (Alaska 2001).

**22.** *See Brigman v. State,* 64 P.3d 152, 158 (Alaska App.2003).

**23.** *See Finkelstein v. Stout,* 774 P.2d 786, 790 (Alaska 1989).

**24.** *See Hayes v. Bering Sea Reindeer Prods.,* 983 P.2d 1280, 1283 (Alaska 1999) (error harmless unless prejudicial).

ny provided no reason why he is unable to obtain full-time employment. He introduced no evidence of physical or mental incapacity.[25] He applied for only ten to fifteen jobs between 1994, when he was allegedly laid off from his construction job, and the 2001 formal hearing. While he claims that his criminal record prevents him from obtaining full-time employment, he admitted that he does not always disclose this information. His record did not prevent him from obtaining employment in the construction industry in 1993 or as a farm laborer in subsequent years. It appears that the primary obstacle to Nunley's obtaining full-time employment is his unwillingness to actively seek it. Indeed, we have previously held that a parent need not even have an employment history in order to impute income to him for child support purposes because Civil Rule 90.3 only bars a finding of voluntary underemployment in two situations: when the underemployed parent is physically or mentally incapacitated or is caring for a child under two years of age to whom the parents owe a joint legal responsibility.[26] "In all other situations, the rule and our case law specifically require courts to consider the 'totality of the circumstances' to decide whether income should be imputed."[27] The record reflects a history of seasonal employment. Because substantial evidence supports the conclusion that Nunley could reasonably have expected to find full-time employment to support his child, we hold that CSED did not err in determining that he was unreasonably underemployed.

### B. The Amount of Income Imputed to Nunley Was Reasonable Given his Skills, Education, and Experience.

■ Nunley also contests the amount of income imputed to him by CSED and claims

that it is unrealistic to assume that he could earn $15,010 per year. In support of this argument he cites language in *Bendixen* stating that the wording of Civil Rule 90.3 "obviously presupposes that some prospect of earning income or some opportunity to find employment actually exists."[28] He also cites *Bostic v. State*,[29] in which this court overturned a child support determination because the obligor parent did not have notice that voluntary underemployment would be an issue at the formal hearing and because the record did not support the hearing officer's determination that the parent could earn a salary of $40,000.[30] Nunley's reliance on these cases is misplaced. In *Bendixen*, we held that an obligor parent's incarceration did not amount to voluntarily unemployment.[31] Nunley was not incarcerated at the time of the hearing and CSED did not rely on his criminal history to support its finding of voluntarily underemployment. And unlike the obligor parent in *Bostic*, Nunley knew that voluntary underemployment would be at issue during the formal hearing, and the income imputed to him was based upon his actual earnings.

CSED increased Nunley's child support obligation from $50 per month, the amount he was required to pay while he was incarcerated, to $282 per month based upon his reported earnings in the first quarter of 1994. This support amount was based upon an extrapolated annual income of $15,010 and an obligation to support two children. Informal Conference Officer Berg declined to modify this amount following an informal conference with Nunley in 1994, though the department later reduced the support obligation to $209 per month after it determined

**25.** Alaska Civil Rule 90.3(a)(4) prohibits the imputation of income for a parent who is physically or mentally incapacitated. In this appeal, and for the first time in this case, Nunley alleges that he has a hernia, which severely limits his job opportunities. Because Nunley did not raise this claim during the administrative proceedings it is not preserved for appeal and is waived. *Southwest Marine, Inc. v. State, Dep't of Transp. & Pub. Facilities, Div. of Alaska Marine Highway Sys.*, 941 P.2d 166, 179 (Alaska 1997).

**26.** *Beaudoin*, 24 P.3d at 528.

**27.** *Id.* (citing Alaska R. Civ. P. 90.3 cmt. III.C).

**28.** *Bendixen v. Bendixen*, 962 P.2d 170, 172 (Alaska 1998).

**29.** 968 P.2d 564 (Alaska 1998).

**30.** *Id.* at 569–70.

**31.** *Bendixen*, 962 P.2d at 172–73.

that Nunley was not the father of Vansia Nunley's daughter, Kiana. After a formal hearing in 2001, Revenue Hearing Examiner Howard found that Nunley's actual work history provided the best estimate of his earning capacity and she affirmed CSED's support obligation of $209 per month based upon an annual income of $15,010. Deputy Commissioner Persily noted that this income works out to just $7.22 per hour on a forty-hour week, which is a reasonable wage for someone of Nunley's age and experience. In fact, this hourly wage is consistent with Nunley's reported hourly earnings as a farm laborer and is only barely above Alaska's minimum wage of $7.15 per hour.[32]

Nunley is a trained welder, and he has work experience as an agricultural worker and laborer, carpenter, pipefitter, and truck driver. While any imputation of income is somewhat speculative, the department reasonably relied upon Nunley's actual earnings to determine his potential income. Had CSED relied upon reported earnings from a period when Nunley made a significantly higher hourly wage than he had historically earned, or than he could reasonably expect to earn in the future, Nunley might have grounds to attack the support calculation.

But he provides no credible evidence to rebut CSED's finding in this case that he is capable of earning barely above minimum wage.

### C. Nunley's Claim of Error for CSED's Suspension of His Driver's License Is Moot.

Nunley also argues that the superior court erred in denying his motion to stay the suspension of his driver's license pending the outcome of his appeal of his child support order.[33] This claim is moot because our holding today concludes Nunley's appeal.

## V. CONCLUSION

Because the record supports the finding that Nunley is voluntarily underemployed, and because the department imputed a reasonable annual income to Nunley to determine his child support obligation, we AFFIRM the decision of the superior court.

---

**32.** AS 23.10.065.

**33.** Both the superior court and this court have the authority to stay the operation of a CSED

decision pending appeal. AS 25.27.220(f) and (h).