*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL J. MITCHELL, | ) | |
| | ) | Supreme Court No. S-15870 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-09-01002 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JOHANNA M. MITCHELL, | ) | |
| | ) | No. 7087 – March 18, 2016 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Michael J. Mitchell, pro se, Tucson, Arizona, Appellant. Johanna M. Mitchell, pro se, Juneau, Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

FABE, Justice.

## I. INTRODUCTION

This appeal raises the question whether the superior court ordered the proper amount of child support in resolving a motion to modify support. A mother and father divorced, and the final decree granted them joint physical custody of their two minor children. Three years later, at age 47, the father quit his job, moved from Alaska to retire in Arizona, and withdrew significant funds from his retirement account. The mother moved for a modification of child support based on these changed circumstances.

She argued that the withdrawn retirement funds should be included in the father's income and that he could afford to pay more child support based on his earning potential. The superior court ordered that the withdrawn retirement funds be included in the father's income for determining child support for a one-year period, effective from the date of the mother's motion. The father appeals, arguing that he cannot now be required to pay child support based on his income from the *previous* year. The mother challenges this contention and continues to argue that the court should have imputed income to the father based on his earning potential.

Because the father's significant increase in income from his retirement account withdrawal justifies a corresponding increase in his child support obligation, we conclude that the superior court's approach of ordering a year's worth of child support based on this year of increased income was not error. But because the superior court failed to consider the imputed income claim that the mother plainly raised in her motion, we remand for further consideration of that question.

## II.    FACTS AND PROCEEDINGS

### A.    Facts And Prior Proceedings

Johanna and Michael Mitchell married in 1996, had two children together in 1998 and 2001, and then separated in the fall of 2009. An attorney mediator helped the parties reach a divorce settlement agreement, which the superior court accepted after a hearing in December 2009. Both parties represented themselves throughout the divorce and subsequent proceedings.

The superior court issued a divorce decree and final child support order following the December 2009 hearing. The child support order gave Johanna and Michael joint legal custody and shared physical custody of their two children, stating that the children would reside with their mother 55% of the time and with their father 45% of the time. Both parents were living in Juneau at that time. Based on the shared custody

arrangement and an evaluation of Michael's and Johanna's relative incomes, the court ordered Johanna to pay $273.35 per month in child support and to purchase health insurance for the children.

In November 2012, at age 47, Michael retired from his job at the National Weather Service, and in March 2013 he moved to Tucson, Arizona. Michael then withdrew $50,000 from his pension account, which he apparently used to purchase his house in Arizona. In July 2013 Johanna filed her first motion to modify child support based on these changed circumstances. Johanna explained that, following Michael's move to Arizona, "[t]he children are now living with the mother . . . 100% of the time and have been since mid-February 2013. Mother is no longer paying child support to father and father is not currently paying child support to [m]other." Johanna did not state a specific amount of child support she was requesting from Michael.

Michael filed a response, agreeing that the existing child support order should be modified and that he should now pay child support to Johanna. But he explained that, for purposes of child support, his income should be calculated based on his predicted future income rather than his current actual income because "[n]either [his] 2012 or 2013 income [was] representative of [his] future earnings." He claimed that from 2014 through 2020 his "only source of earnings" would be his retirement account, which would yield yearly payments of approximately $17,380. He explained that he would begin receiving a pension in 2021.

Michael filed several documents to support the contentions in his response brief. First, he filed a copy of his 2012 tax return showing a gross income of $95,319, earned while he was still working for the National Weather Service. Second, he filed a child support affidavit reporting his "2013 actual and expected" income of $8,991. Finally, Michael filed another child support affidavit showing his "[e]stimated 2014-2020" income of $17,382 per year from his retirement account. Based on his

estimated future income, Michael calculated that he owed $341 per month in child support.  In the affidavit showing his actual 2013 income, Michael noted that the figure excluded "a 1 time lump sum withdrawal" from his Individual Retirement Account (IRA).  But he did not list the amount of this withdrawal.  Johanna did not file a reply or otherwise contest Michael's calculations.

The superior court granted Johanna's first motion to modify child support in October 2013.  But rather than using his actual income including the lump-sum withdrawal, the court used Michael's expected income calculations as the basis for determining the amount of support he owed.  In granting the motion, the court noted that "Michael filed a response indicating that he agrees with the motion, but he requests that the support order be based on his future retirement income.  Johanna filed no reply disagreeing with this request."  The court ordered Michael to pay $341 per month in child support, which is the amount Michael had calculated based on his estimated future income of $17,382.  Johanna did not appeal this decision.

B.      Proceedings Leading To This Appeal

In July 2014 Johanna filed a second motion to modify child support, which is the subject of this appeal.  Johanna argued that changed circumstances warranted further modification of child support as permitted under Alaska Civil Rule 90.3(h)(1).  Johanna alleged that Michael's actual 2013 income had been much higher than the expected income he had reported in his affidavit during the previous year's proceedings.  Johanna cited Michael's 2013 tax return and explained that his actual "2013 adjusted gross income was $58,506 compared to his July 2013 estimate of $17,382."  Thus, she continued, "[h]is taxable 2013 income was $41,124 higher than he told the court it would be last year."  To support this contention, Johanna filed a copy of Michael's 2013 tax return showing the $50,000 withdrawal from his retirement account, for a total gross

income of $58,506.[1]  She also filed a child support guidelines affidavit using Michael's 2013 actual income, as reported on his tax return, to calculate his child support obligation at $1,230.98 per month.  Based on his actual income, she concluded, "[h]e can afford to pay more than $3,852 per year."

Johanna also argued that Michael should be required to pay more child support because he was capable of earning a higher income:  "He should use this access [to retirement funds] to also help support his children."  She emphasized that Michael's unemployment was voluntary and that it reduced his ability to support his daughters, explaining that "[h]e 'retired' (quit) working at the National Weather Service voluntarily [in] late 2012 of his own accord.  His children should not suffer for that decision.  He is only 49 years old, too young to retire, capable of working."  While Johanna did not file any new documentation of Michael's earning potential, the record already contained Michael's 2012 tax return, which had been filed in the 2013 proceedings and showed that he earned $95,319 in the year leading up to his retirement.

Michael opposed Johanna's motion to modify support.  He did not contest Johanna's ability to move for modification based on the retirement withdrawal, instead responding to her motion on the merits.  He argued that the lump-sum withdrawal from

---

[1]        The record does not reveal exactly how or when Johanna received Michael's tax return showing his actual 2013 income.  She may have received a copy of the return as part of a request for income information under Civil Rule 90.3(e)(2), which provides, in part:  "While there is an ongoing monthly support obligation, either party must provide to the other party, within 30 days of a written request, documents such as tax returns and pay stubs showing the party's income for the prior calendar year."  For our purposes, it suffices to note that this information was apparently not available at the time of Johanna's 2013 motion to modify, when Michael submitted his 2012 tax return and his *estimated* income for 2013, mentioning the IRA withdrawal but not giving its amount.  Michael's 2013 tax return — the only information in the record documenting Michael's actual 2013 income — would not have been available until 2014.

his retirement account should not be included in the calculation of his income because, he argued again, his "2013 income [was] not representative of [his] 2014 and future income." He further explained that "the vast majority" of his 2013 income was the lump-sum withdrawal from his retirement account, which he said was used to purchase his primary residence in Arizona. According to his own interpretation of Civil Rule 90.3 Commentary III.A, Michael argued that a pension withdrawal "is specific[al]ly excluded from income calculations." He reiterated that his income from 2014 to 2020 would be "primarily an $18,000 yearly payment from [his] IRA."

Michael also responded at least indirectly to Johanna's assertion that he was voluntarily unemployed by contending that his "early retirement and move to Arizona [was] in the best interest of [his] physical and mental health, which in the long term, will be in the best interest of [his] daughters." Michael also stated that he "would like to reserve the right to collect unpaid child support from [December] 2009 to [February] 2012 from the plaintiff," though he provided no documentation to support the allegation of unpaid child support. With his response, Michael filed a copy of his 2013 tax return showing $58,506 in income including the lump-sum withdrawal. He also filed a child support guidelines affidavit based on his estimated 2014 income of $18,000 plus capital gains and dividends; this affidavit calculated his child support obligation at $546.32 per month.

In Johanna's reply, in addition to highlighting the high costs and time pressure she faces in raising the children, she again alleged that Michael's voluntary unemployment was unreasonable and not in the best interest of the children:

> Michael sold his house, quit his full-time job with excellent benefits, and moved over 2,200 miles away from his daughters. And he insists that he is "retired" at the age

of 49,[2] and can't afford to pay more than $546.32 per month to help support his children. Why doesn't he seek a job? He has a bachelor's degree.

Johanna also questioned the veracity of Michael's reported income for 2014, requesting more details about Michael's retirement plan and asking "why [it cannot] be used to help support his children." She noted that she has heard Michael "does a lot of traveling" and wondered "[h]ow [it] is . . . that he can afford to travel if his budget is indeed only $18,000 per year."

In February 2015 the superior court granted Johanna's modification motion in part. The court accepted Michael's estimate of his reduced income for future years but rejected his contention that the lump-sum withdrawal should be completely excluded from his income. The superior court noted that the Commentary to Civil Rule 90.3 provides: "Lump sum withdrawals from pension or profit sharing plans . . . will not be counted as income to the extent that the proceeds have already been counted as income for the purposes of calculating child support . . . (i.e., contributions to a voluntary pension plan)."[3] The superior court explained that this provision is intended "to avoid double-counting: that is, counting income once when it is contributed to a retirement account and again when it is withdrawn. It does not say that lump sum withdrawals are never counted as income for child support purposes." Here, the court found that "Michael provides no basis from which the court could conclude that the $50,000 withdrawn from [his] retirement account in 2013 was previously counted as income for the purposes of calculating child support." The court also found that "Rule 90.3 bases child support upon the obligor parent's 'total income from all sources,' which *does*

---

[2]     The record shows that Michael was 49 at the time of these proceedings; he was 47 when he retired.

[3]     Alaska R. Civ. P. 90.3 cmt. III.A.

include lump sum withdrawals when there is no double-counting." The superior court therefore concluded that the withdrawal should properly be considered part of Michael's 2013 income.

But the court accepted Michael's argument "that a one-time withdrawal should not be used to determine child support for any period other than the one during which it was made." The court reasoned that "[i]f it is truly a one-time withdrawal, it would not be fair to include it in the obligor parent's income for all subsequent years." Thus, the court concluded that "Michael's 2013 retirement withdrawal should be used to determine child support for a period of one year only, but not thereafter." On this basis, the court calculated that Michael's child support obligation based on his 2013 income was $1,207.30 per month using the formula given in Civil Rule 90.3. "Because this amount is more than 15% greater than the amount order[ed] in 2013," the court concluded, "there has been a material change of circumstances which requires modification of the 2013 order" under the Rule 90.3 threshold for presumptive changed circumstances.

To capture Michael's 2013 withdrawal in his current payments, the court reasoned that "[t]ypically child support is calculated one year late, because tax information is not available for any given year until after that year is completed." Thus, the court essentially ordered Michael to pay the year's worth of child support based on his 2013 income one year late, beginning the month after Johanna filed her motion. Under this order, Michael would pay $1,207.30 monthly child support for 12 months beginning August 1, 2014. Then on August 1, 2015, Michael's child support obligation would "revert to $546.32, the figure proposed by Michael." The court also ordered that the parties exchange tax and income documents in early 2015 and explained that the parties were free to "move to modify child support in advance of August 1, 2015[,] if they believe this figure should be changed."

Although the superior court briefly acknowledged Johanna's contention that Michael is voluntarily unemployed, it failed to decide whether the unemployment was unreasonable, seeming to conclude that Johanna had not adequately raised a claim for imputed income under the "potential income" provision of Rule 90.3. "While Civil Rule 90.3(a)(4) allows the court to impute additional income to a parent who is voluntarily and unreasonably underemployed," the superior court explained, "Johanna has not asked the court to do so."[4] In acknowledging that she had raised this issue to some extent, the court mentioned only Johanna's assertions made in her reply brief and stated that "fairness precludes the court from considering arguments made for the first time in a reply brief."[5] Thus, the court declined to assess Michael's earning potential or decide the question whether he was voluntarily and unreasonably unemployed.

Michael now appeals the trial court's modification order.

## III. STANDARD OF REVIEW

Generally "[c]hild support awards are reviewed for abuse of discretion."[6] Similarly, "[t]rial courts have broad discretion in deciding whether to modify child support orders"; thus "[w]e review a trial court's determination of whether to modify

---

[4] The court cited *Nunley v. State, Department of Revenue, Child Support Enforcement Division* for the proposition that a court may impute income to a parent who is voluntarily and unreasonably unemployed, but the court did not discuss whether Johanna's contentions might have raised an implied claim in this regard. *See* 99 P.3d 7, 11 (Alaska 2004).

[5] *See King v. Carey*, 143 P.3d 972, 974 & n.4 (Alaska 2006); *Alaska State Emps. Ass'n v. Alaska Pub. Emps. Ass'n*, 813 P.2d 669, 671 n.6 (Alaska 1991).

[6] *Ruppe v. Ruppe*, 358 P.3d 1284, 1289 (Alaska 2015) (quoting *Heustess v. Kelley-Heustess*, 259 P.3d 462, 467 (Alaska 2011)).

child support for an abuse of discretion."[7]  "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[8]

However, "[w]hether the superior court applied the correct legal standard to its child support determination is a question of law that we review de novo."[9] Similarly, "[t]he interpretation of Alaska Civil Rules governing child support orders is reviewed de novo; we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[10]  Thus, "[w]e reverse child support awards only if the superior court abused its discretion or applied an incorrect legal standard,"[11] or if "its factual findings are clearly erroneous."[12]

Finally, in determining whether a party has waived or adequately raised a particular claim in the proceedings below, generally "[w]aiver is a legal issue that this court reviews de novo."[13]  But we review for plain error when the parties have not

---

[7]    *Wilhour v. Wilhour*, 308 P.3d 884, 887 (Alaska 2013) (citing *Olmstead v. Ziegler*, 42 P.3d 1102, 1104 (Alaska 2002)).

[8]    *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015) (citing *Tufco, Inc. v. Pac. Envtl. Corp.*, 113 P.3d 668, 671 (Alaska 2005)).

[9]    *Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014) (citing *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

[10]    *J.L.P. v. V.L.A.*, 30 P.3d 590, 594 (Alaska 2001) (italics omitted); *see also Millette v. Millette*, 240 P.3d 1217, 1219 (Alaska 2010).

[11]    *Koller*, 71 P.3d at 804 (citing *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001)).

[12]    *Limeres*, 320 P.3d at 296.

[13]    *State v. Jacob*, 214 P.3d 353, 361 (Alaska 2009) (citing *Lauth v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 12 P.3d 181, 184 (Alaska 2000) ("We . . . apply our independent judgment when determining whether an issue has been

(continued...)

technically appealed the superior court's finding of waiver.[14] "Plain error exists where 'an obvious mistake has been made [that] creates a high likelihood that injustice has resulted.' "[15]

## IV. DISCUSSION

The fundamental question we must address in this case is whether the superior court ordered Michael to pay the proper amount of child support when it decided Johanna's second motion to modify support. In considering this question, we recall our longstanding principle "that in child support cases the court's paramount concern is the best interests of the child[ren]."[16] We have explained that "[c]hildren have an interest in adequate support independent of either parent's interest,"[17] and therefore our ultimate duty here is to ensure that the superior court's child support order serves the best interests of Michael and Johanna's children.

Michael argues that the amount of child support ordered here is improper because it uses the income he earned in 2013, including the IRA withdrawal he made in that year, as the basis for his child support obligation in the *following* year. He contends that this method of calculating income is inconsistent with section III.E. of the Commentary to Alaska Civil Rule 90.3 regarding the appropriate time period for

---

[13](...continued)
waived below due to inadequate briefing.")).

[14]     *See Laughlin v. Laughlin*, 229 P.3d 1002, 1005-06 (Alaska 2010) (applying the plain error standard of review to an element of the trial court's decision that the parties had not challenged on appeal).

[15]     *Id.* at 1005 (citing *In re Estate of Fields*, 219 P.3d 995, 1011 (Alaska 2009)).

[16]     *Hinchey v. Hinchey*, 722 P.2d 949, 952 n.5 (Alaska 1986).

[17]     *Laughlin*, 229 P.3d at 1006.

calculating income. Relatedly, he argues that the amount of child support ordered is "excessive" because, when compared to his *current income*, "it exceeds the amount dictated by Civil Rule 90.3" and other guidelines. Johanna contests these arguments and also argues that the court should have imputed income to Michael based on his earning capacity, as permitted under Rule 90.3(a)(4)'s "potential income" provision. In assessing whether the superior court used the proper method for determining child support, we first consider Michael's arguments and then turn to Johanna's imputed income argument.

## A. The Superior Court Did Not Err In Using Michael's Actual 2013 Income To Calculate Child Support For The Following Year.

### 1. Johanna's argument for including the IRA withdrawal in Michael's income is not barred.

Michael first contends that Johanna is now barred from arguing that the IRA withdrawal should be included in his income, because she did not appeal the superior court's 2013 child support modification order. This argument is based on the principles of res judicata and finality. He essentially argues that the trial court's 2013 order, which accepted Michael's own income estimates and his non-inclusion of the lump-sum retirement withdrawal, constituted a final judgment on the question whether to include the lump-sum withdrawal in his income. Because Johanna did not appeal that order, he argues that Johanna cannot relitigate that issue. This argument fails for two reasons.

First, Michael never contended in the superior court that Johanna is barred from litigating the issue of the IRA withdrawal, and thus he has waived that argument.[18] Second, the appropriate framework for analyzing a motion to modify child support is not

---

[18] *See, e.g.*, *Still v. Cunningham*, 94 P.3d 1104, 1111 (Alaska 2004) ("Issues that are not raised in the superior court are waived and cannot be asserted on appeal as grounds for overturning a judgment.").

res judicata but rather the changed circumstances doctrine under Civil Rule 90.3. As we have previously explained, "motions to modify child support, under Alaska law, do not technically raise res judicata concerns."[19] "This is so because a motion to modify is not a new action. It, rather, asks the court to re-open the final judgment in the same action."[20] But "the principle of finality is a sound one"[21] even in this context, so we have held that "[t]here must be a material change of circumstances before a support order can be modified."[22] Our cases on this point reflect and interpret Rule 90.3(h)(1), which likewise provides that "[a] final child support award may be modified upon a showing of a material change of circumstances." A material change of circumstances can arise from "certain fact changes occurring after the entry of a judgment" or from "certain changes in the law."[23]

Here, new information regarding Michael's 2013 IRA withdrawal constituted changed factual circumstances. The record provides no indication that Johanna could have known the amount of Michael's IRA withdrawal until she received his 2013 tax return — necessarily sometime after the close of calendar year 2013 — which showed that the withdrawal amounted to $50,000, and which she submitted with her 2014 motion to modify. Although the withdrawal itself happened before the 2013 proceedings, and Michael briefly mentioned "a 1 time lump sum withdraw[a]l" in his 2013 filings, Johanna could not be expected to move for modification based on the

---

[19]    *Bunn v. House*, 934 P.2d 753, 757 (Alaska 1997).

[20]    *Id.* at 757 n.12.

[21]    *Id.* at 757.

[22]    *Id.* at 758.

[23]    *Id.*

retirement withdrawal until she received information about the *amount* of the withdrawal. Michael's IRA withdrawal thus constituted a change in factual circumstances at the time that Johanna received full information about it.[24]

Finally, the 2013 modification order did not expressly address the issue of Michael's IRA withdrawal, nor did Michael provide any information about the amount of the withdrawal during those proceedings. So Johanna's motion does not violate the principle of finality. Accordingly, even if Michael's argument on this point had not been waived, Johanna would still be permitted to argue for the inclusion of his IRA withdrawal in his income in these proceedings.

### 2. The superior court did not abuse its discretion in setting Michael's 2014-2015 child support obligation.

Michael does not contest the superior court's conclusion that a withdrawal from a retirement account is properly considered income for purposes of child support. He concedes that the exclusion of the withdrawal from his 2013 affidavit was "incorrectly based on" his interpretation of Alaska Civil Rule 90.3. Instead, Michael argues on appeal that the court-ordered modification is erroneous because the timing of the income calculation was wrong. He contends that the superior court erred by using his 2013 income as the basis for his child support obligation in the following year, from mid-2014 through mid-2015. Because ascertaining the proper time period for calculating

---

[24] As Johanna attested in her 2014 motion to modify, Michael's 2013 tax return showed that his actual gross income for 2013 was $58,506. This amount was more than $40,000 greater than the predicted income of $8,991 on which the 2013 modification order was based, equaling a 550% increase. This large increase clearly exceeds the 15% threshold for a presumed change in circumstances under Rule 90.3(h)(1).

support is a matter of applying the correct legal standard for a child support determination, we review the superior court's decision de novo.[25]

Michael's core argument relies on the Commentary to Alaska Civil Rule 90.3. Section III.E of the Commentary, titled "Time Period for Calculating Income," provides that courts should generally calculate child support based on the best possible approximation of the parent's *current* income:

> Child support is calculated as a certain percentage of the income which will be earned when the support is to be paid. This determination will necessarily be somewhat speculative because the relevant income figure is expected future income. The court must examine all available evidence to make the best possible calculation.

> The determination of future income may be especially difficult when the obligor has had very erratic income in the past. In such a situation, the court may choose to average the obligor's past income over several years.

Taking this provision at face value, Michael argues that the superior court's modification order "clearly contradicts" the provision because his 2013 income — on which the modification is based — is "unrepresentative of expected future income."

It is true that a literal reading of Comment III.E might suggest that child support payments must be calculated based on "expected future income." But as we have previously explained, "[t]he commentary to Civil Rule 90.3 has not been officially adopted, but it can provide useful guidance in applying the rule."[26] We did cite Comment III.E in the somewhat analogous case of *Swaney v. Granger*, where we

---

[25]     *See Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014) (citing *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

[26]     *Miller v. Clough*, 165 P.3d 594, 599 n.10 (Alaska 2007) (citing *Caldwell v. State, Dep't of Revenue, Child Support Enf't Div.*, 105 P.3d 570, 573 n.6 (Alaska 2005)).

explained that "a child support award that is applicable to a past period should be based on a parent's actual income for that period, while an ongoing award should be based on the income the parent is expected to receive during the period to which the award will apply."[27] But our holding in that case ultimately focused on the fact that the modification order was effective back to a date before the motion to modify had been filed, making it an impermissible retroactive modification under Rule 90.3(h)(2).[28] Here, the superior court was careful not to modify Michael's child support obligation retroactively; it issued a prospective order effective the first day of the month after Johanna filed the motion to modify support.[29] And the modification was not an "ongoing award"[30] but was instead a one-year award that increased child support payments to reflect Michael's significant one-year increase in income. So neither *Swaney v. Granger* nor Comment III.E dictates the outcome of this case.

Injustice would result if child support calculations could never incorporate income information from the previous year. At the time of the 2013 proceedings, Johanna had no way of knowing the amount of Michael's IRA withdrawal. Michael's child support affidavit at that time simply mentioned "a 1 time lump sum withdraw[a]l from [his] retirement IRA" but did not specify an amount. Nothing in the record indicates that Johanna could have known the amount of the withdrawal until she received a copy of Michael's 2013 tax return, which could not have happened until the beginning

---

[27]     297 P.3d 132, 139 (Alaska 2013).

[28]     *Id.* at 136.

[29]     *See* Alaska R. Civ. P. 90.3(h)(2); *see also Swaney*, 297 P.3d at 136 ("Modifications are allowed to the extent that they are 'effective on or after the date that a motion for modification . . . is served on the opposing party.' " (alteration in original) (quoting Alaska R. Civ. P. 90.3(h)(2))).

[30]     *See Swaney*, 297 P.3d at 139.

of 2014 at the earliest. Preventing modification in such a situation would diminish our policy of protecting a child's independent interest in adequate child support.[31] If one parent won the lottery and the other parent had no information about the amount of the winnings until the following year, it would be unjust for a court to conclude that the lottery winner could not be ordered to pay child support on the amount of his or her winnings. In such a case, as in the current case, justice requires that the previous year's income be considered in setting child support for the following year even if it is a time-limited adjustment of child support for a one-time income event.

In fact, a court's refusal to consider the previous year's income could actually create an incentive for parents to hide short-term increases in income until it is too late for the other parent to collect child support on that income. Here, Michael himself chose not to report the amount of his IRA withdrawal at the time of the 2013 proceedings. If he had provided this information at the time, the superior court could have modified his support obligation accordingly, and it would not have later been necessary for the court to set Michael's 2014 child support obligation based on his 2013 income. But having chosen not to report the amount of his withdrawal in 2013, Michael may not argue that this income cannot factor into his child support obligation in 2014, the first year in which both Johanna and the superior court received information about the amount of the IRA withdrawal.

Finally, the trial court correctly observed that, in practice, "[t]ypically child support is calculated one year late, because tax information is not available for any given year until after that year is completed." And it is not unprecedented to order a one-year change in child support reflecting a temporary increase in a parent's income. In

_____

[31]     *See, e.g.*, *Laughlin v. Laughlin*, 229 P.3d 1002, 1006 (Alaska 2010) (emphasizing children's "interest in adequate support independent of either parent's interest").

*Brotherton v. State*, for instance, we reviewed a child support determination following a property division that included a significant amount of interest paid in a single year.[32] There we held that it was appropriate to count the interest as part of the wife's income for a single year but not beyond, essentially creating a similar one-year change in child support reflecting a unique income source in that year.[33] Similarly, the Commentary to Civil Rule 90.3 explains that "a temporary, unforeseen, and involuntary reduction in income may justify a temporary reduction in support subject to the retroactivity provisions in Rule 90.3(h)(2)," despite the fact that "[a] temporary reduction in income normally will not justify an *ongoing* modification reducing child support."[34] The same logic applies to increases in income, so that a temporary increase in support would be justified under similar circumstances. Accordingly, under the specific circumstances in this case, we conclude that the superior court did not err in using Michael's 2013 income as the basis for a one-year change in child support during the following year.

Michael also argues, relatedly, that the amount of his child support obligation for August 2014 through July 2015 "exceeds the amount dictated by Civil Rule 90.3" when compared to his actual income for that period. Rule 90.3(a)(2) provides that when one parent has primary physical custody, "[t]he percentage by which the non-custodial parent's adjusted income must be multiplied in order to calculate the child support award is . . . 27% . . . for two children." When setting the amount of support, a trial court "presumptively does not abuse its discretion when it awards child support

---

[32]     *Brotherton v. State, Dep't of Revenue, Child Support Servs. Div. ex rel. Brotherton*, 201 P.3d 1206, 1211 (Alaska 2009).

[33]     *Id.* at 1213.

[34]     Alaska R. Civ. P. 90.3 cmt. X.A (emphasis added).

based on Civil Rule 90.3."[35]  Here, because we have determined that it was permissible to use Michael's 2013 income as the basis for his child support obligation the following year, the relevant inquiry is whether the amount of child support is appropriate compared to Michael's 2013 income.  The superior court hewed to this inquiry, stating that Michael's child support obligation was determined by "the amount calculated under Rule 90.3" based on Michael's gross income for 2013.  The court explained that it began with Michael's 2013 gross income of $58,506, subtracted the applicable deductions, and then applied the formula dictated by Rule 90.3.  This yielded a monthly payment of $1,207 including health insurance costs.  So because the superior court "award[ed] child support based on Civil Rule 90.3"[36] using the appropriate baseline of Michael's 2013 income, we conclude that the superior court did not abuse its discretion in setting the amount of Michael's child support obligation for August 2014 through July 2015.

Michael also argues that his child support obligation "exceeds the maximum allowable amount under Alaska Child Support Services Division[] (CSSD) guidelines[] and the [f]ederal Consumer Credit Protection Act."  The guidelines Michael refers to are codified in Title 15, section 125.540 of the Alaska Administrative Code, which specifies the maximum amount that may be withheld from a paycheck for child support.[37]  But neither this section nor any other provision of the Administrative Code

---

[35]     *Coghill v. Coghill*, 836 P.2d 921, 924 (Alaska 1992) (citing Alaska R. Civ. P. 90.3 cmt. VI); *see* Alaska R. Civ. P. 90.3 cmt. VI.A ("[T]he rule presumes that support calculated under 90.3(a) . . . does not result in manifest injustice.").

[36]     *Coghill*, 836 P.2d at 924.

[37]     15 Alaska Administrative Code (AAC) 125.540 (2015); *see also* FREQUENTLY ASKED QUESTIONS ABOUT CHILD SUPPORT ENFORCEMENT SERVICES, (continued...)

creates an independent limit on the amount of a child support award.[38]  Instead, the code makes clear that the provisions of Civil Rule 90.3 govern the calculation of child support.[39]  Similarly, the relevant section of the federal Consumer Credit Protection Act deals exclusively with wage garnishment and has no bearing on the amount of child support that may be awarded by a court.[40]  So these provisions do not limit the amount of child support that Michael can be ordered to pay, and Michael does not contend that any amount has been withheld or garnished from his earnings.  We therefore conclude that these provisions do not apply to the current case, and thus they do not alter our conclusion that the superior court did not err in calculating Michael's child support obligation based on his 2013 income.

**B.     It Was Plain Error To Decline To Consider The Imputed Income Claim That Johanna Clearly Raised In Her Motion.**

The second issue raised by the parties is whether the superior court erred by not considering Johanna's claim for imputed income based on Michael's earning potential.[41]  In her brief before this court, Johanna specifically asks the court to "impute additional income to Michael for being voluntarily and unreasonably underemployed."

---

[37](...continued)
http://www.csed.state.ak.us/faq/FAQ_Enforcement.aspx (explaining the Administrative Code provision).

[38]     *See* 15 AAC 125.540.

[39]     *See* 15 AAC 125.070.

[40]     *See* 15 U.S.C. § 1673(b)(2)(B) (2012).

[41]     In our case law on this issue, we have referred to these claims both as "imputed income" and "potential income" claims, echoing language from Civil Rule 90.3(a)(4). *See, e.g.*, *Horne v. Touhakis*, 356 P.3d 280, 281 (Alaska 2015) (referring to both "potential income" and "imputed income"); *Ward v. Urling*, 167 P.3d 48, 51 (Alaska 2007) (same).  We therefore use these two terms interchangeably here.

Johanna raises this issue in her statement of issues presented for review,[42] as well as in the body and conclusion of her brief. In describing the relief she is seeking, Johanna clearly lays out her imputed income argument by asking the court to

> either (1) affirm or keep the Superior Court's final judgment; or (2) impute additional income to Michael based on his 2012 tax return and recalculate the amount of child support he should pay. This would force Michael to quit gaming the system and get a job worthy of his education and work history. Michael worked for the National Weather Service for about 22 years, with a parting salary of at least $93,302 per year . . . , and he has a bachelor's degree from the University of Arizona - Tucson.

Johanna also cites the Commentary to Civil Rule 90.3, emphasizing the section titled "Potential Income" by underlining portions of its text that are identical to the corresponding potential income provision of Rule 90.3(a)(4). Although Johanna clearly raised this issue in her brief here, Michael elected not to file a reply addressing her imputed income argument.

Johanna did not cross-appeal the superior court's order, and generally a party who "fail[s] to file a cross-appeal waives the right to contest rulings below."[43] For a self-represented party, however, we have held that courts may on occasion relax procedural requirements if it is clear what the party is "obviously attempting to

---

[42]    In her statement of the issues presented for review, Johanna contends that Michael should have been ordered "to pay an amount commensurate with his 2012 income," which would have required him "to get a job worthy of his skills and education in order to help support his daughters." Although her statement of the issues seems to suggest that the superior court's 2013 order erred in failing to impute additional income to Michael, Johanna later clarifies that she is also "hereby asking" for imputed income in the current proceedings.

[43]    *Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004).

accomplish."[44] And in her appellee's brief here, Johanna clearly seeks review of the superior court's failure to "order[] Michael to pay an amount commensurate with his 2012 [pre-retirement] income." Moreover, in the child support context, "[c]hildren have an interest in adequate support independent of either parent's interest,"[45] and thus neither parent can waive the children's right to adequate support through a procedural failure.

In the child support context, even where the parties have failed to raise a challenge to a child support agreement, we have determined that we have an independent duty to review the question whether the support order is permissible under Rule 90.3. We faced this situation in *Laughlin v. Laughlin*, where divorced parents disputed certain elements of a "children's fund" that they had established in lieu of child support. Both parents seemingly agreed with the premise that they could establish such a fund to replace child support, and neither challenged the fund's validity.[46] But we addressed the question of the fund's validity sua sponte. We recognized that our longstanding case law clearly established "that 'parents may not make a child support agreement which is not subject to Rule 90.3.' "[47] "Given this case law," we concluded, "we must address whether the agreement to create a children's fund in lieu of child support is permissible before considering [the appellant's] argument" that challenged a specific element of the

---

[44]     *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987); *see also Gilbert v. Nina Plaza Condo Ass'n*, 64 P.3d 126, 129 (Alaska 2003).

[45]     *Laughlin v. Laughlin*, 229 P.3d 1002, 1006 (Alaska 2010).

[46]     *Id.* at 1003-05.

[47]     *Id.* at 1004 (alterations omitted) (quoting *Cox v. Cox*, 776 P.2d 1045, 1048 (1989)).

fund.[48] We then explained that "[w]e review matters that were not raised below and not listed in a statement of points on appeal for plain error," which "exists where 'an obvious mistake has been made [that] creates a high likelihood that injustice has resulted.' "[49]

In the current case, we have a similar duty to review the superior court's decision not to consider Johanna's argument that Michael was unreasonably and voluntarily unemployed and whether income should be imputed to Michael in setting the amount of child support. Our case law interpreting Civil Rule 90.3(a)(4) establishes that a child support award is properly "based upon a parent's potential income if he or she is found to be voluntarily and unreasonably unemployed or underemployed."[50] And while in *Laughlin* neither party had raised the issue at all,[51] here Johanna raised her imputed income argument both in the trial court and in her briefing before this court. So our obligation to consider this issue is even more apparent in this case than it was in *Laughlin*. In light of our case law on imputed income,[52] and recognizing children's independent interest in adequate child support,[53] we consider whether the superior court erred in failing to address the imputed income claim that Johanna raised in her second motion to modify support.

---

[48]     *Id.* at 1005.

[49]     *Id.* (quoting *In re Estate of Fields*, 219 P.3d 995, 1011 (Alaska 2009)).

[50]     *Nunley v. State, Dep't of Revenue, Child Support Enf't Div.*, 99 P.3d 7, 11 (Alaska 2004) (citing Alaska R. Civ. P. 90.3(a)(4); 15 AAC 125.020(b)); *see also Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998); *Kowalski v. Kowalski*, 806 P.2d 1368, 1370-71 (Alaska 1991).

[51]     *Laughlin*, 229 P.3d at 1004-05.

[52]     *See, e.g.*, *Nunley*, 99 P.3d at 11.

[53]     *See Laughlin*, 229 P.3d at 1006.

Under Civil Rule 90.3(a)(4), titled "Potential Income," a court may impute income "based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed." The rule specifies that "[p]otential income will be based upon the parent's work history, qualifications, and job opportunities. The court also may impute potential income for non-income or low income producing assets." Further, the Commentary to Rule 90.3 adds that "[t]he court shall consider the totality of the circumstances in deciding whether to impute income. When a parent makes a career change, this consideration should include the extent to which the children will ultimately benefit from the change."[54] We have repeatedly confirmed that imputation of income based on a parent's potential earning level is proper under this provision of Rule 90.3, explaining that a "parent who voluntarily reduces his or her income should not automatically receive a corresponding reduction in his or her child support obligation."[55] Moreover, we have specifically held that the "potential income" provision applies to a parent who is nominally retired if the retirement was voluntary.[56]

Here the superior court acknowledged that it might be appropriate to impute income to Michael under Civil Rule 90.3(a)(4), but it found that "Johanna ha[d] not

---

[54] Alaska R. Civ. P. 90.3 cmt. III.C.

[55] *Dunn*, 952 P.2d at 270 (quoting *Nass v. Seaton*, 904 P.2d 412, 418 (Alaska 1995)); *see also Nunley*, 99 P.3d at 11; *Beaudoin v. Beaudoin*, 24 P.3d 523, 527 (Alaska 2001); *Kowalski*, 806 P.2d at 1370-71.

[56] *See Dunn*, 952 P.2d at 271 (upholding the superior court's imputation of income to a parent who was "in his early fifties, had voluntarily retired," and was still capable of working, as evidenced by his pastimes); *Kowalski*, 806 P.2d at 1371 n.5 (explaining that "the trial court must consider the nature and reasons for an obligor parent's unemployment" and citing cases from other jurisdictions where courts had imputed income to voluntarily retired parents).

asked the court to do so." To the extent that the superior court recognized that Johanna had raised the issue of potential income, the court seemed to find that she had raised the issue for the first time in her reply, and it explained that "fairness precludes the court from considering arguments made for the first time in a reply brief." Yet our review of Johanna's pleadings reveals that she expressly raised an imputed income argument in her motion to modify child support and then reiterated that argument in her reply brief.

In assessing whether a claim was adequately raised, "[w]e consider pro se pleadings liberally in an effort to determine what legal claims have been raised."[57] "This proposition reflects a policy against finding unintended waiver of claims in technically defective pleadings filed by pro se litigants."[58] We have cautioned that "even when a pro se litigant is involved, an argument is considered waived when the party 'cites no authority and fails to provide a legal theory' for his or her argument."[59] But we consider a claim to be raised when the "briefing was such that [the court] could discern [the party's] legal arguments and [the opposing party] could reply to them."[60] In *Peterson v. Ek*, for instance, we concluded that the appellant had preserved his claims in a contract dispute because "we could discern his legal arguments" despite the fact that "he failed to cite legal authority for any of his arguments."[61] Essentially, the court's primary

---

[57] *Briggs v. City of Palmer*, 333 P.3d 746, 747 (Alaska 2014) (quoting *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012)).

[58] *DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005) (citing *Zok v. State*, 903 P.2d 574, 576 n.2 (Alaska 1995)).

[59] *Gilbert v. Sperbeck*, 126 P.3d 1057, 1062 (Alaska 2005) (quoting *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004)).

[60] *Peterson*, 93 P.3d at 464 n.9.

[61] *Id.*

concern is that the pleader not be allowed "to unreasonably catch an unwary litigant."[62]

Here, Johanna's motion to modify child support included an imputed income claim and specifically contended that Michael was voluntarily unemployed and could be earning a higher income. Her opening motion alleged that "[h]e 'retired' (quit) working at the National Weather Service voluntarily [in] late 2012 of his own accord." She argued that "[h]is children should not suffer for that decision. He is only 49 years old, too young to retire, capable of working." By using key words to allege that Michael had "quit . . . voluntarily" and was "capable of working," Johanna's motion contained the core elements of a claim for imputed income. Although she did not cite Civil Rule 90.3(a)(4), the language she used echoed the "voluntarily and unreasonably . . . unemployed" phrasing from the rule itself. Thus her language was sufficient to allow a court to understand that she was attempting to raise a claim for income imputation under the potential income provision of Rule 90.3(a)(4). Furthermore, Michael's 2012 tax return — showing his earning potential — had been filed during the 2013 proceedings, so the superior court had access to the relevant information on which to base a calculation of imputed income.

Indeed, in his response to the motion to modify support, Michael responded directly to Johanna's contentions about his voluntary unemployment by arguing that his "early retir[e]ment and move to Arizona [was] in the best interest of [his] physical and mental health, which in the long term, will be in the best int[e]rest of [his] daughters." In her reply, Johanna in turn submitted an affidavit arguing that Michael's voluntary unemployment was not in the best interest of the children by explaining that "Michael sold his house, quit his full-time job with excellent benefits, and moved over 2,200 miles

---

[62]     *Gamble v. Northstore P'ship*, 907 P.2d 477, 482 (Alaska 1995) (quoting *Lopez v. U.S. Fid. & Guar. Co.*, 15 Alaska 633, 637 (D. Alaska 1955)).

away from his daughters." In her reply Johanna also reiterated that Michael could afford to pay more child support based on his earning potential, given that "[h]e has a bachelor's degree," and she suggested that he should "seek a job" to better support his children. Thus, Michael appeared able to "discern [Johanna's] legal arguments and . . . reply to them"[63] in his response brief, before Johanna responded to his assertions and reiterated her own arguments in her reply brief. So the fairness concern raised by the superior court, and the general rule that the court will not consider arguments raised for the first time in a reply brief, do not in fact present a problem here. To the contrary: Johanna adequately raised an imputed income argument in her motion to modify support, and Michael replied to it in his response brief. Accordingly, we conclude that it was error to fail to consider Johanna's imputed income claim under Civil Rule 90.3(a)(4), and we remand for further proceedings on that issue.

On remand, the superior court must consider whether Michael's choices to retire early and not to seek work in Arizona were unreasonable and, if so, assess his potential income in determining the appropriate amount of child support under Rule 90.3.[64] In considering this question, it is possible that imputing income to Michael will obviate the need to make a one-year child support calculation based on Michael's 2013 IRA withdrawal. If the superior court decides that imputed income is not appropriate under Rule 90.3(a)(4) after weighing the facts and arguments presented by the parties, then the superior court correctly based Michael's 2014-2015 child support on his actual 2013 income, including the IRA withdrawal.

---

[63] *Peterson*, 93 P.3d at 464 n.9.

[64] *See* Alaska R. Civ. P. 90.3(a)(4).

## V.  CONCLUSION

We AFFIRM the superior court's use of Michael's 2013 income as the basis of child support in the following year but REMAND this case to the superior court to consider whether additional income should be imputed to Michael based on his earning potential.