NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TIMOTHY THOMPSON, | ) | |
| | ) | Supreme Court No. S-18720 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-14-00907 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ELIZABETH CRANE, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2063 – December 11, 2024 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Lance Joanis, Judge.

Appearances: Amanda Harber, 49th State Law, LLC, Soldotna, for Appellant. Notice of nonparticipation filed by Shana Theiler, Walton, Theiler & Winegarden, LLC, Kenai, for Appellee.

Before: Maassen, Chief Justice, and Borghesan, Henderson, and Pate, Justices. [Carney, Justice, not participating.]

## I.    INTRODUCTION

In this child custody case, the superior court adopted the recommendations of a superior court master, following an evidentiary hearing, that it decline to modify physical custody, modify legal custody with regard to the children's counseling, and calculate child support pursuant to the Alaska Civil Rule 90.3(b) formula. The court

---

\*    Entered under Alaska Appellate Rule 214.

rejected the father's request that his current child support obligation be reduced because of his substantial past arrearages. The father appealed both the custody decision and the child support order.

While the appeal was pending, the father informed us that the custody issues were "potentially moot" because of a superseding custody modification proceeding and superior court order, leaving only the child support issue to be decided on his appeal. Thus limiting our review, we conclude that the superior court did not abuse its discretion by declining to reduce the father's child support obligation, and we therefore affirm the superior court's child support order.

## II.  FACTS AND PROCEEDINGS

### A.  General Background And 2021 Custody Modification

Timothy Thompson and Elizabeth Crane dissolved their marriage in 2014. They agreed to 50/50 physical custody and joint legal custody of their two children, though the court later determined that over the years, in practice, physical custody moved toward a 70/30 split with Crane as the primary custodian to accommodate Thompson's work schedule. After about five years of co-parenting in Alaska, Thompson's employment took him to New Mexico, and Crane moved to modify custody. Following an evidentiary hearing before a superior court master, the court ordered that Crane have primary physical custody of the children; that the parents have joint legal custody; that Thompson have seven weeks of summer visitation and alternating school breaks and holidays; and that "[c]hild support . . . be calculated pursuant to Alaska Civil Rule 90.3(b)(1)."

### B.  Thompson's Motions To Modify Custody And Vary Child Support

Just a few months later, Thompson filed his own motion to modify custody. He contended that circumstances had changed significantly since the court last heard evidence, citing a change in Crane's living situation, failures of

communication affecting his visitation rights, and their daughter's expressed preference to live with him in New Mexico.

Thompson followed this with a motion to modify child support, which had been set initially in 2015. He noted Crane's claim that he was over $70,000 in arrears. He argued, however, that he was entitled to a variance in his current child support obligation because of the unfairness of the arrearages, which failed to properly account either for an "informal agreement" he had with Crane to suspend his child support obligation in the 2017-2020 time period or for a change in their relative incomes. Thompson explained that because of the parties' agreement, Crane had asked the Child Support Services Division (CSSD) in 2017 to suspend its efforts to collect child support from him; this had halted the garnishment of his wages for a portion of what was owed. CSSD's suspension of services did not affect Thompson's support obligation, however, as the notice it sent Thompson at the time clarified that although Crane had "indicated that CSSD's services are no longer needed effective 11/20/17," he was "still liable for the child support until the children emancipate or the order is changed."

Thompson also filed a motion to modify legal custody, asking for "sole decision-making authority for mental health/behavioral health decisions of their shared children."

## C.    The Superior Court's Custody And Child Support Order

The superior court master held evidentiary hearings on the pending motions over three days in late 2021; both parents testified and presented a number of exhibits. In her written recommendations the master concluded, first, that there was no substantial change in circumstances affecting the children that would justify a modification of physical custody; and second, that legal custody should be modified so that from now on Crane "should have the final say on any and all counselors chosen for" the daughter. Finally, addressing child support, the master concluded that the evidence did not justify an exception to the usual prohibition on retroactive

modifications, and she therefore decided that Thompson's child support payments should be recalculated due to an increase in his earnings but without any offset for the substantial arrearages. After considering Thompson's objections to the master's recommendations and Crane's responses to those objections, the superior court approved the recommendations with one handwritten amendment not relevant here.

### D.     Thompson's Appeal And Notice That Custody Issues Are Moot

Thompson filed this appeal, challenging the court's decisions on physical and legal custody on various grounds and also arguing that the court abused its discretion by failing to offset his substantial arrearages from the child support award. After briefing was complete, Thompson filed a notice informing us that the superior court had ruled on a subsequent motion to modify custody, shifting primary physical custody from Crane to Thompson, and that "[t]his custody modification potentially moots" the four custody-related issues Thompson had briefed on appeal. We invited Crane to respond to the notice; she did not.

We read Thompson's notice as advising us that the only issue we need to address is the one related to child support. With no objection from Crane, we limit our opinion accordingly.

## III.    STANDARD OF REVIEW

We generally review child support awards, and decisions whether to modify such awards, for abuse of discretion.[1] "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[2]

---

[1]     *Mitchell v. Mitchell*, 370 P.3d 1070, 1076 (Alaska 2016).

[2]     *Id.* (quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015)).

## IV. DISCUSSION

Thompson contends that the superior court abused its discretion by failing to modify his current child support obligation to offset substantial arrearages he incurred from 2017 to 2020, the period during which CSSD had suspended its enforcement assistance at Crane's request. He contends that the arrearages reflect unfairly high child support for those years because "his income and Crane's [were] at least even"; because in acknowledgment of this fact the parents informally agreed to suspend his payments; and because requiring him to make up the arrearages would result in a "nightmare case" for him and a "windfall" for her. He asks that we remand the case "with instructions for the master to take evidence on Crane's income from 2017-2020," which he argues will demonstrate the inequity he claims, and "modify [his] child support pursuant to Alaska Civil Rule 90.3(c)(1) to avoid a manifest injustice."

As Thompson frames his argument, he is not directly asking for a retroactive modification of the arrearages — something flatly prohibited in most circumstances by Rule 90.3(h)(2).[3] Rather, he is asking for a variance in his *current* child support obligation by application of the Rule 90.3(c)(1) exception, which allows the court to "vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied." Thompson contends that it is manifestly unjust for him to have "to pay a debt that he does not actually owe . . . and to pay his current child support obligation" at the same time.

But regardless of how Thompson frames his argument — whether as a reduction in the arrears or as a reduction in his current obligation *because of* the arrears — it is clearly an attempt to retroactively reduce or eliminate his obligation for the

---

[3]  The rule provides: "Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d)." *See* AS 25.27.166(d) (permitting retroactive modification after disestablishment of paternity).

2017–2020 time period. Like the superior court, we therefore review his request in the context of Rule 90.3(h)(2)'s prohibition on retroactive modifications.

This prohibition is subject to two exceptions.[4] The first exception is when the obligor parent has disestablished his paternity of the child pursuant to AS 25.27.166.[5] This exception is irrelevant; Thompson does not contend that it applies. The second exception is in Rule 90.3(h)(3), which allows the court to preclude the collection of arrearages "that accumulated during a time period exceeding six consecutive months for which the [obligee] parent agreed or acquiesced to the obligor exercising primary custody of the child"; this exception must be proven by "clear and convincing evidence." Thompson does not argue for this exception either. He does not contend that he exercised primary custody during the time the arrearages accumulated, but rather that both custody and the parties' finances "were close[] to 50/50." In short, neither recognized exception allows the court in this case to ignore the mandate of Rule 90.3(h)(2) that "[c]hild support arrearage may not be modified retroactively."

We do not need to decide whether the "manifest injustice" exception in Rule 90.3(c)(1) may be used as Thompson advocates here — to reduce a *current* child support obligation to reflect purported unfairness with a past award, which would in effect be a retroactive modification of arrearages. Even applying the standard of Rule 90.3(c)(1) — "clear and convincing evidence that manifest injustice would result if the support award were not varied" — we see no error in the superior court's order. The court adopted the master's findings on this issue, including its consideration of the equities relevant to "whether to preclude collecting arrears." The court found that Thompson had not paid any child support other than what CSSD was "garnishing out

---

[4]     *Webb v. State, Dep't of Revenue, Child Support Enf't Div. ex rel. Webb*, 120 P.3d 197, 199 (Alaska 2005).

[5]     Alaska R. Civ. P. 90.3(h)(2).

of his [pay]check"; that he "never had primary custody of the children and was properly informed by CSSD of his obligation," including the fact that his obligation continued despite CSSD's withdrawal from the enforcement process; that "[h]e ha[d] not provided any substantial in-kind support" other than payments for clothing and medical care while the children were in his custody, payments which were supported by only "minimal receipts"; and that his "pay stubs . . . show a substantial increase in his earnings."

Thompson points to evidence that his 2017 and 2018 income was considerably less than it was in 2014, when the amount of child support was set, as well as Crane's testimony that when they first got divorced the parties' incomes were "closer to a 50-50 split." Evidence of significantly reduced income may have supported a motion to modify child support in the 2017–2020 time frame.[6] Implicit in Thompson's argument is the assumption that his failure to challenge the governing order during those years was excused by the parties' "informal agreement." But "a parent may not waive the right to receive child support payments by acquiescence or private agreement unless that agreement is approved by the court,"[7] which must subject the agreement to "scrutiny under Rule 90.3."[8] Thompson points to comments by the master recognizing the existence of an informal agreement between the parents and wondering whether the arrearages could somehow be mitigated; however, the 2015 child support order remained in force until it was replaced in 2021, the same master ultimately rejecting Thompson's argument that his child support should be reduced to reflect the arrearages.

---

[6]     *See* Alaska R. Civ. P. 90.3(h)(1) (providing that "[a] final child support award may be modified upon a showing of a material change of circumstances," which "will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order").

[7]     *Jaymot v. Skillings-Donat*, 216 P.3d 534, 546-47 (Alaska 2009).

[8]     *Nix v. Nix*, 855 P.2d 1332, 1334 (Alaska 1993).

We conclude that the superior court did not err either in its application of the prohibition on retroactive modifications in Rule 90.3(h)(2) or in failing to find a manifest injustice under Rule 90.3(c)(1) that would allow a reduction in Thompson's child support obligation.

## V. CONCLUSION

We AFFIRM the superior court's child support order.