NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JACK W. FREDRICKSON, | ) | |
| | ) | Supreme Court No. S-17786 |
| Appellant, | ) | |
| | ) | Superior Court No. 1SI-12-00009 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ALLISON O. HACKETT, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1956 – March 22, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Sitka, M. Jude Pate, Judge.

Appearances: Jack W. Fredrickson, pro se, Sitka, Appellant. James W. McGowan, Sitka, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

In this appeal of a child support award, we hold that the superior court did not err by calculating support according to the formula prescribed by Alaska Civil Rule 90.3, even if the former spouses had agreed to a different formula, because the obligor spouse did not show that manifest injustice would result from following the rule. We affirm most of the superior court's procedural rulings but reverse its decision to disregard certain documents submitted in support of the obligor's child support calculations. And

---

\* Entered under Alaska Appellate Rule 214.

we largely affirm the court's support calculations, except we vacate its refusal to grant the obligor a deduction for retirement account contributions made by his business. We therefore remand to recalculate support consistent with this opinion.

## II.     FACTS AND PROCEEDINGS

### A.     Divorce And Custody Agreement

Jack Fredrickson and Allison Hackett lived in Sitka and were married in 1996. They have three children, born in 2001, 2003, and 2006. Hackett filed for divorce in January 2012. Frederickson and Hackett came to a divorce agreement that governed legal and physical custody of the children and asked the court to order child support in line with Alaska Civil Rule 90.3, which governs child support awards.

The agreement provided for shared legal custody and stated that the children's needs "can best be met by primary physical custody being with [Hackett] and the children spending time with [Fredrickson] on the schedule" described in the agreement. The schedule gave Frederickson physical custody of the children approximately 25% of the time, which meant, according to Rule 90.3, that Hackett had "primary physical custody" and was entitled to child support calculated according to the Rule's formula for primary physical custody.[1] However, the agreement's provision for child support calculated the parties' obligations as if Hackett had physical custody 60% of the time and Frederickson had physical custody 40% of the time, using Rule 90.3's formula for "shared physical custody." The superior court issued a divorce decree adopting the parties' agreement for property settlement, custody, and child support.

---

[1]     Rule 90.3 uses a different formula to calculate support awards depending on whether the obligee parent has "primary physical custody," which the rule defines as more than 70% of the time, or "shared physical custody," which the rule defines as between 30% and 70% of the time. *See* Alaska R. Civ. P. 90.3(a), (b), and (f).

## B.     Motion To Modify Custody, Visitation, And Child Support

In August 2015 Frederickson moved to modify custody and visitation and for a reduction in child support. He pointed out that the documents in his agreement with Hackett were "conflicting" because they calculated child support using a 60/40 physical custody percentage that did not match the actual amount of time each parent had physical custody. Frederickson requested increased physical custody in line with the 60/40 split used to calculate child support as well as a reduction in his child support obligations due to a drop in his income. Frederickson argued he had shown a change in circumstances warranting modification of physical custody[2] because (1) he had renovated the cottage where he lived to make it more suitable for children; (2) he disagreed with Hackett's decision to move the children from religious school to public school; (3) Hackett obtained new employment that meant she was unavailable after school; and (4) the two had communication issues. Hackett opposed, arguing that custody should not be modified and that Frederickson's child support obligations should be increased instead.

The superior court denied Frederickson's motion to modify custody, as well as Frederickson's subsequent motion for reconsideration. Addressing the parties' settlement agreement, it explained that "[t]here was no ambiguity about the custody and visitation," that "[t]he terms of the parties' agreement . . . were specific and detailed," and that use of a 60/40 split to calculate child support "embodie[d] a simple clerical error." It ruled that Frederickson had not alleged a substantial change in circumstances and denied the motion to modify custody without a hearing. Instead of ruling on the child support motions, the court sought more information from Frederickson about his

---

[2]     AS 25.20.110(a) ("An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child.").

income. Frederickson appealed, and the superior court continued the child support proceedings until after custody was resolved.

We affirmed the superior court's interpretation of the settlement agreement but reversed its denial of Frederickson's motion to modify custody without a hearing.[3] We agreed with the superior court that, despite Frederickson's protestations, "there was no ambiguity about the approximate amount of time each party would have custody."[4] Weighing the detailed schedule set forth in the custody section of the divorce agreement against the "brief" references to shared 60/40 custody located solely in sections concerning child support, we agreed with the superior court's interpretation that the agreement provided for an approximately 75/25 physical custody split.[5] We reversed the superior court's ruling that Frederickson's renovations to the cottage did not amount to a change in circumstances and remanded the case for a hearing on his motion to modify custody and visitation.[6]

## C. Post-Remand Custody Trial

On remand the superior court set trial for three days in June 2018. Frederickson, who had been unrepresented, obtained counsel. The judge overseeing the case retired and the case was reassigned to a newly appointed judge.

In her pretrial brief Hackett argued that the issues before the court included whether to modify physical custody, legal custody, and visitation; how to calculate child support and arrearages; and how to interpret the divorce agreement's medical support provisions. Frederickson contended in his pretrial brief that the parties had agreed "that

---

[3]     *Fredrickson v. Hackett*, 407 P.3d 480, 483-85 (Alaska 2017).

[4]     *Id.* at 482-83.

[5]     *Id.*

[6]     *Id.* at 483-85.

child support would be calculated on a 60/40 shared support basis." In his post-trial briefing Frederickson explained that he sought alternating weekly custody of the children, a limit on the number of activities the children could attend without the parents' mutual agreement, and a change to his child support obligations.

The superior court issued an oral decision on the record in July 2018, which it memorialized with a written order in September 2018. The court concluded that the parties would continue to share legal custody. Although the court found that Frederickson had demonstrated a substantial change in circumstances, it concluded that it was in the children's best interests to maintain the existing physical custody schedule.

The superior court's order did not resolve the issue of child support. It instead ordered the parties to submit evidence supporting their proposed child support calculations.

### D. Post-Trial Proceedings

After the court's custody decision, Frederickson's counsel withdrew. A flurry of motions followed.

In February 2019 the court held a scheduling hearing on four outstanding motions: (1) Hackett's motion for costs and attorney's fees; (2) Hackett's motion for an order to show cause why Frederickson should not be held in contempt for failing to pay his share of the children's medical and activity expenses required by the settlement agreement; (3) Frederickson's motion for "clarification" of the court's order, which focused on the court's interpretation of the parties' settlement agreement; and (4) Frederickson's motion to compel Hackett to produce materials relevant to the child support dispute. The superior court denied Frederickson's motion to compel, stating that the information that Frederickson sought had already been provided.

The court decided to set an evidentiary hearing on the attorney's fees issue, asking Frederickson how long he would need to present his evidence. It also scheduled

a hearing for the remaining motions on May 22, 2019. A few days later Frederickson moved the superior court to reconsider its denial of his motion to compel, noting he wanted Hackett's materials "in advance of the May 22, 2019 evidentiary hearing."

On May 13 Frederickson moved for relief from the court's September 2018 written order denying his motion to modify the settlement agreement, continuing to argue that the original settlement agreement contemplated a 60/40 physical custody split that should be the basis for the child support calculation. In that motion Frederickson asked the court to set a hearing about the child support portion of his original motion to modify. He apparently sought this hearing to present evidence on whether the parties should calculate child support using a 60/40 physical custody split.

Hackett opposed Frederickson's motion for relief, noting that "the issue of child support [wa]s properly before this court" and that the parties were "on the eve of a hearing at which [Frederickson] may supplement the record with as much testimony as he wants to present on child support issues." Frederickson also moved to continue the May 22 hearing on the other motions until the court ruled on his motions for reconsideration and for relief from the court's September 2018 written order.

E.     **May 22 Hearing And Aftermath**

At the May 22 hearing the court denied Frederickson's motion to continue, his motion for reconsideration of his motion to compel, and his motion for relief, explaining that Frederickson was "essentially asking to relitigate decisions that have already been made by [the previous judge], by the Supreme Court, and by myself." The court heard testimony from Frederickson and Hackett and gave each party an opportunity for cross-examination and argument. Frederickson and Hackett both submitted exhibits into evidence without objection. The court asked Frederickson if he had any additional evidence not presented at the hearing, and Frederickson indicated there was none.

Instead, Frederickson responded that he wished he had an attorney to represent him at the hearing.

A week later Frederickson submitted what he termed "additional supplemental child support materials." He explained in an affidavit that he "was never told that the [May 22] evidentiary hearing would include the child support issue" or that witnesses would be called. Included among the materials were amended versions of Frederickson's 2017 and 2018 tax returns. Frederickson alleged that the original tax returns for those years, which he had offered into evidence at the hearing, contained errors that overstated his income. Hackett moved to strike the submission.

In July Frederickson moved to submit additional child support evidence, arguing that the evidence would "provide[] insight into . . . the motives behind [the parents'] unusual decision to use a shared custody child support calculation with a primary custody schedule" in the settlement agreement.

## F. Post-Hearing Superior Court Orders

The superior court issued an order in October 2019 awarding Hackett a portion of her requested attorney's fees and costs. In November it issued a written order memorializing its May 2019 oral decision denying Frederickson's motion for relief, explaining that its interpretation of the parties' agreement (i.e., that the custody agreement awarded Hackett primary physical custody notwithstanding the reference to shared custody in the agreement's child support calculations) had already been affirmed on appeal.

Later in November the superior court also granted Hackett's motion for an order to show cause, construing Frederickson's motion to "clarify" its order as an opposition. It found Frederickson had willfully disobeyed its order because he admitted to not paying half of the children's medical and activity expenses. The court did not

impose sanctions in the order but imposed a schedule for Frederickson to pay the various expenses.

In December 2019 the superior court directed Hackett to submit a proposed child support order using the primary custody formula. The court denied Frederickson's July motion to submit additional evidence after the hearing in May and partially granted Hackett's motion to strike the additional evidence. Yet it permitted Frederickson to resubmit evidence "if . . . genuinely and reasonably necessary to correct, rebut, or supplement" the proposed child support calculations that the court had ordered Hackett to submit.

Hackett submitted a draft order proposing that Frederickson pay $1,909.42 in monthly child support. Frederickson objected, arguing that some of the facts Hackett relied upon were erroneous and that the parties had agreed to a 60/40 percent shared custody calculation. He argued that the correct amount of monthly child support was $1,619.21 if using the primary custody formula and lower if using the allegedly agreed-upon shared custody formula.[7] These amounts were calculated using income figures from his amended tax returns for 2017 and 2018, which he attached as exhibits, explaining that Hackett's figures were inflated because they relied on the original returns and the belief that he had some unreported income in 2018.

In April 2020 the superior court entered an order setting Fredrickson's monthly child support obligations and calculating his arrears using the primary custody formula. It calculated Frederickson's monthly obligation as $1,883.67 and his arrearages, dating back to Hackett's motion to modify support in September 2015, as $35,820.23. It rejected Frederickson's bid to use income figures from the amended tax

---

[7]     Frederickson submitted corrected pages two days later to correct additional errors in the amended returns. The amounts discussed here reflect these corrections.

returns he recently submitted as "an untimely request for reconsideration" of its December 2019 order granting Hackett's motion to strike. Instead the court used the original versions of those tax returns that Frederickson had submitted at the May 2019 hearing.

Frederickson moved for reconsideration, arguing that the court did not give him the opportunity to respond to Hackett's proposed child support numbers and taking issue with certain figures and calculations. Frederickson appealed the order setting child support before the superior court denied his motion for reconsideration.

## III.    STANDARDS OF REVIEW

We reverse child support awards only if the superior court abused its discretion, applied an incorrect legal standard, or made clearly erroneous factual findings.[8] Superior courts have broad discretion in deciding whether to modify child support orders, so we review a superior court's determination of whether to modify child support for abuse of discretion.[9] We will find an abuse of discretion when the court's exercise of discretion is "manifestly unreasonable."[10]

Whether the superior court applied the correct legal standard to its child support determination is a question of law that we review de novo.[11] The interpretation of Alaska Civil Rules governing child support orders is also reviewed de novo, and "we

---

[8]     *Mitchell v. Mitchell*, 370 P.3d 1070, 1076 (Alaska 2016).

[9]     *Id.*

[10]    *Id.*

[11]    *Id.*

will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[12]

We review procedural decisions for abuse of discretion, which we find "when left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[13] In procedural matters, an abuse of discretion exists "when a party has been deprived of a substantial right or seriously prejudiced by the [superior] court's ruling."[14]

## IV. DISCUSSION

Frederickson's opening brief identifies 26 issues for review, yet some of these issues are inadequately briefed and others are duplicative. The arguments in Frederickson's brief can be boiled down to three categories: (1) child support should be calculated using Rule 90.3's formula for shared custody because of the terms of the parties' settlement agreement; (2) the court's procedural rulings unfairly prejudiced his case; and (3) the superior court made errors when calculating his child support obligations. We affirm the superior court's rulings on all but two points related to the figures used in calculating Frederickson's child support obligations and remand for the limited purpose of recalculating his child support consistent with this opinion.

### A. It Was Not Error For The Superior Court To Use The Primary Custody Formula To Calculate Child Support.

Frederickson argues that his child support should be calculated using Rule 90.3's shared custody formula. The parties' custody agreement, which the superior court declined to modify, gives him physical custody less than 30% of the time. According to

---

[12] *Id.*

[13] *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 592 (Alaska 2007).

[14] *See Azimi v. Johns*, 254 P.3d 1054, 1059 (Alaska 2011).

Rule 90.3, child support should be calculated using the primary custody formula.[15]  Yet Frederickson argues that the superior court should have calculated child support using the shared custody formula because that is what the parties intended, as provided by the express terms of their custody and support agreement.[16]

Assuming that the parties' agreed to use a shared custody formula, that agreement does not control the court's determination of Frederickson's child support obligation.  Alaska Civil Rule 90.3(f) provides that a court must determine child support based on the amount of time the children spend with each parent under the custody order.[17]  It does not matter what the parties may have intended:  "A child support award in a case in which one parent is awarded primary physical custody as defined by [Rule

---

[15]  *See* Alaska R. Civ. P. 90.3(a) (establishing formula for child support when "one parent is awarded primary physical custody as defined by paragraph (f)" of the rule); Alaska R. Civ. P. 90.3(f)(2) (defining "primary physical custody" as when "the children reside with the other parent for a period specified in the custody order of less than 30 percent of the year").

[16]  In the previous appeal to this court, Fredrickson took the position that the parties intended to share physical custody with a 60/40 split, consistent with the percentages used in the agreement to calculate child support.  *Fredrickson v. Hackett*, 407 P.3d 480, 482 (Alaska 2017).  The superior court rejected this argument, viewing the use of a 60/40 split for child support a "simple clerical error," and we affirmed.  *Id.* at 483.  Fredrickson now takes the position that the parties intended to give Hackett primary physical custody but also specifically intended to calculate support as if the parties shared custody 60/40.  He relies in part on emails between the parties during their settlement negotiations in 2012, which he attempted to introduced into evidence in the superior court.  But the emails are immaterial to our decision because, as we explain below, the parties' intent does not dictate the child support award.

[17]  *Compare* Alaska R. Civ. P. 90.3(a) (establishing formula for calculating child support when one parent is awarded primary physical custody), *with* Alaska R. Civ. P. 90.3(b) (establishing different formula for calculating child support when parents are awarded shared physical custody); *see also* Alaska R. Civ. P. 90.3(f) (defining primary physical custody and shared physical custody).

90.3(f)] *will* be calculated" using the primary custody formula.[18]  And when shared physical custody is awarded, meaning that a parent has custody of the children at least 30% and up to 70% of the time, the child support award will be calculated according to the shared custody formula.[19]  We confirmed the mandatory nature of Rule 90.3's formulas in *Cox v. Cox*, holding the rule "appl[ied] to all awards of child support, whether agreed to by the parties or contested" and that "[p]arents may not make a child support agreement which is not subject to the rule."[20]  The superior court may vary the child support award from the amount calculated according to Rule 90.3's terms only "for good cause upon proof by clear and convincing evidence that manifest injustice would result" without a variance.[21]

Frederickson has never made the showing required to deviate from Rule 90.3's terms.  The agreement that the parties reached in 2012 gives Frederickson physical custody of the children less than 30% of the year.[22]  Because the agreement gave Hackett primary physical custody while also calculating child support using a shared

---

**18**    Alaska R. Civ. P. 90.3(a) (emphasis added); *see also Turinsky v. Long*, 910 P.2d 590, 595 (Alaska 1996) ("Child support awards should be based on a custody and visitation order.  If the parties do not follow the custody order, they should ask the court to enforce the custody order or should move to modify the child support order.").

**19**    Alaska R. Civ. P. 90.3(b), (f).

**20**    776 P.2d 1045, 1047-48 (Alaska 1989) ("[Rule 90.3] reflect[s] a paternalistic view toward child support agreements which conflicts with the freedom of contract. . . . [Rule 90.3] reflects the congressional findings that child support is often set at inadequate levels and the [Child Support Enforcement] Commission's conclusion that many parents underestimate actual child support costs."); *see also Turinsky*, 910 P.2d at 595.

**21**    Alaska R. Civ. P. 90.3(c)(1).

**22**    *Fredrickson v. Hackett*, 407 P.3d 480, 483 (Alaska 2017).

custody formula, Rule 90.3 required the superior court to determine that this mismatch was necessary to avoid "manifest injustice" before approving it.[23]  There is no indication in the record that the superior court made this determination, and Frederickson does not suggest that it did.  In 2018, after denying Frederickson's motion for more custody time with the children, the superior court reasoned that the mismatch between the agreement's physical custody provisions and its formula for calculating child support was grounds to modify the support award, as Hackett had requested.[24]  Although Frederickson continued to insist that the parties had intended this mismatch, he did not explain to the superior court why it was necessary to prevent manifest injustice.  Nor did he address this issue in his opening brief to our court.  He therefore has waived the argument.[25]

Even if the "manifest injustice" argument had not been waived, it would fail.  In his reply brief, Frederickson maintained that this case falls under the "manifest injustice" exception because he and Hackett originally agreed to calculate support using the shared custody formula.  Yet the Commentary to Rule 90.3 explains that "[t]he fact that the parties . . . agree on an amount of support is not reason in itself to vary the guidelines."[26]  Instead a variance "must be based on an explanation by the parties of what unusual factual circumstances justify the variation," such as "especially large

---

[23]  Alaska R. Civ. P. 90.3(c)(1).

[24]  Frederickson does not argue that correcting an apparent error of this sort — adopting a negotiated child support agreement inconsistent with Rule 90.3 without determining that the variance is necessary to avoid manifest injustice — is not a proper basis for modifying the award.

[25]  *See Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005) ("To avoid waiver, a pro se litigant's briefing must allow his or her opponent and this court to discern the pro se's legal argument.  Even a pro se litigant, however, must cite authority and provide a legal theory." (footnote omitted)).

[26]  Alaska R. Civ. P. 90.3 cmt. VI.B.1; *see also Cox*, 776 P.2d at 1047-48.

family size, significant income of a child," or other factors.[27]  Because Frederickson did not identify other reasons why a variance is necessary to avoid manifest injustice, either in proceedings before the superior court or in his briefing to us, we cannot say the superior court committed plain error by calculating child support according to the formula prescribed by Rule 90.3.[28]  We therefore affirm the superior court's use of the primary custody formula to calculate Frederickson's child support obligation.

**B.      We Uphold Most Of The Superior Court's Procedural Rulings Except Its Rejection Of Frederickson's Attempt To Submit His Amended Tax Returns.**

Frederickson argues that the superior court erred in several of its procedural decisions.  In particular, he argues that the court erred by (1) failing to give him sufficient notice of the May 22, 2019 hearing at which evidence on child support was taken and denying his motion for a continuance; (2) making adverse discovery rulings; (3) failing to enforce the final check of exhibits at the hearing as required by Civil Rule 43.1; and (4) refusing to accept as evidence amended versions of his 2017 and 2018 tax returns.

**1.      Notice of hearing and denial of continuance**

Frederickson argues that he was not on notice that the May 22, 2019 hearing would involve elements of trial because it was listed on Alaska CourtView as a "non-trial hearing" and that he was not aware the court would take evidence on the figures to be used in calculating child support.  This is essentially an argument that Frederickson lacked sufficient notice of the proceeding, which raises the question of

---

[27]      Alaska R. Civ. P. 90.3 cmt. VI.B.1.

[28]      *Mitchell v. Mitchell*, 370 P.3d 1070, 1076-77 (Alaska 2016) (explaining that when a party fails to argue a point before the superior court, we will reverse on that point only if the superior court committed "plain error," which is "an obvious mistake . . . creat[ing] a high likelihood that injustice has resulted" (internal quotations omitted)).

whether he received due process.[29] Whether a party received due process is a question of law that we review de novo.[30] A party claiming a violation of due process must show more than a "theoretical possibility of prejudice" resulting from the lack of notice.[31]

The superior court scheduled this hearing at a trial-setting conference on February 15, 2019. At that conference the court explained that it planned to have "an evidentiary hearing on the attorney's fees question" raised by Hackett's motion for fees and costs. The court asked Frederickson how much time he would need to present evidence, and he responded one hour. The court then decided it would also hold a hearing on Hackett's motion for an order to show cause for Frederickson's nonpayment of the children's activity fees; Frederickson stated he would need two hours to address this issue. The court explained to Frederickson that it would treat his motion for clarification — in which Frederickson disputed certain child support expenditures — as an opposition to Hackett's motions and that the hearing would include argument on that motion too. Thus Frederickson is correct to the extent he argues that the superior court did not clearly identify that it would take evidence on Frederickson's child support obligations at the May 22 hearing.

However, the record indicates that Frederickson was aware that the court might do so. Frederickson moved shortly after the trial-setting conference for reconsideration of his motion to compel production of Hackett's child support materials, stating that he wanted to receive these materials "in advance of the May 22, 2019

---

**29** *See Laura B. v. Wade B.*, 424 P.3d 315, 317 (Alaska 2018) ("Procedural due process under [the Alaska Constitution] 'requires notice and opportunity for hearing appropriate to the nature of the case.' " (quoting *Debra P. v. Laurence S.*, 309 P.3d 1258, 1261 (Alaska 2013))).

**30** *Easley v. Easley*, 394 P.3d 517, 520 (Alaska 2017).

**31** *In re Hospitalization of Jacob S.*, 384 P.3d 758, 764 (Alaska 2016).

evidentiary hearing." When Frederickson filed a motion less than a month before the May 22 hearing arguing that the court needed to set another hearing on child support, Hackett responded that the parties were "on the eve of a hearing at which [Frederickson] may supplement the record with as much testimony as he wants to present on child support issues" — putting Frederickson on notice. And Frederickson's motion to continue the May 22 hearing until after the court's ruling on his motion for "relief" — which concerned the settlement agreement's terms for calculating child support — suggests he was aware the court might decide the issue of child support on the basis of the May 22 hearing, but believed interpreting the parties' settlement agreement was a threshold issue to be decided first.

Frederickson also fails to show prejudice. Frederickson testified at the hearing, had the opportunity to cross-examine Hackett, submitted exhibits into evidence, and did not object to Hackett's exhibits. When the court asked Frederickson if he had any additional evidence to present, he did not mention any. With the exception of his amended tax returns for 2017 and 2018, which we address below, Frederickson's appellate briefing does not explain how he was unable to give the court an accurate picture of his finances in order to calculate child support. He does not identify the witnesses he would have called, the exhibits he would have presented, or how he might have objected to Hackett's exhibits. Because the record indicates Frederickson was aware of the possibility that evidence relevant to child support would be taken and because Frederickson does not show how he was prejudiced, we conclude the superior court did not violate his right to due process.

Relatedly, Frederickson argues that the superior court abused its discretion by refusing to continue the May 22 hearing based on a motion that he filed a week

earlier. We review a superior court's denial of a continuance for abuse of discretion.[32] "Because of the necessity for orderly, prompt and effective disposition of litigation and the loss and hardship to the parties and witnesses, a motion for continuance should be denied absent a weighty reason to the contrary."[33] The denial of a continuance may be an abuse of discretion if it forces a party to go to trial without being able to fairly present its case.[34] But we discount prejudice resulting from a party's own lack of diligence.[35]

Frederickson's motion to continue did not offer any reason to continue the hearing beyond dealing with other motions first — motions that the court had largely addressed already. And as with the issue of notice, Frederickson does not explain how the denial of a continuance prejudiced him. Therefore we cannot find an abuse of discretion in the court's denial of the requested continuance.

### 2. Discovery rulings

Frederickson argues that the superior court failed to promptly enforce the deadline for Hackett to submit the documentation supporting her request for child support following the June 2018 trial. But by the time the superior court denied Frederickson's motion to compel in February 2019, the information Frederickson sought from Hackett had, according to the superior court, already been provided. Frederickson has not identified any prejudice from the delay in receiving Hackett's child support

---

[32]     *Wagner v. Wagner*, 299 P.3d 170, 175 (Alaska 2013).

[33]     *Id.* (internal quotation marks omitted).

[34]     *Id.*

[35]     *See Shooshanian v. Dire*, 237 P.3d 618, 623-24 (Alaska 2010).

materials, so we see no abuse of discretion in the court's denial of his motion to compel.[36]

Frederickson also argues that the superior court mishandled discovery — specifically his request for production of photographs — relevant to the June 2018 trial and September 2018 written order in which the court declined to modify custody. Because Frederickson did not appeal the superior court's decision not to modify custody, this discovery argument is not timely and we do not address it.

### 3. Exhibits check

Frederickson argues the superior court should have enforced the "final check" of exhibits required by Alaska Civil Rule 43.1(e) at the May 22 hearing. Frederickson did not raise this point at the hearing, so we review it for plain error.[37]

The final check in Rule 43.1 occurs at the end of a trial, before submission of a case to the jury or the court, as a way for the parties to ensure exhibits and exhibit lists are accurate before they are added to the record.[38] Frederickson does not explain

---

[36] *See Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 592 (Alaska 2007) (holding procedural rulings reviewed for abuse of discretion); *Azimi v. Johns*, 254 P.3d 1054, 1059 (Alaska 2011) (explaining abuse of discretion exists "when a party has been deprived of a substantial right or seriously prejudiced by the [superior] court's ruling").

[37] *See Moreno v. State*, 341 P.3d 1134, 1136 (Alaska 2015) ("Trial errors to which the parties did not object are reviewed for plain error.").

[38] *See* Alaska R. Civ. P. 43.1(e) ("Prior to submission of the case to the jury or to the court sitting without a jury, the court shall require counsel and those parties not represented by counsel to (1) examine all intended, identified, offered, or admitted exhibits and the in-court clerk's exhibit list, (2) confirm to the court that the list accurately reflects the status of the exhibits, and (3) confirm that any modifications to the exhibits ordered by the court have been made. Upon proper motion or the court's own motion, the court may order additional exhibits marked for identification and/or admitted
(continued...)

how the lack of a final check was prejudicial. He does not point to any exhibits that were improperly admitted or disallowed, and at the hearing he did not object to any of the exhibits Hackett offered. Frederickson argues that the lack of a final check "resulted in an ambuscade as Hackett's counsel had 17 exhibits and there was no chance to prepare a defense." But having the final check would not have given Frederickson more time to prepare a defense. Frederickson does not demonstrate how he suffered prejudice as a result of the lack of a final check, such as missing exhibits or submission of exhibits that had not been admitted.[39] The lack of final exhibit check was not plain error.

### 4.     Amended tax returns

A week after the May 22 hearing, Frederickson filed with the superior court additional documents related to child support that included amended versions of his 2017 and 2018 tax returns. Hackett moved to strike the submission. The court partially granted Hackett's motion to strike on the same day it directed Hackett to submit a proposed child support order. The court permitted Frederickson to reintroduce materials "if . . . genuinely and reasonably necessary to correct, rebut, or supplement" Hackett's proposed child support calculations. Frederickson submitted the amended tax returns again, but the court rejected them, deeming them "an untimely request for reconsideration" of its prior rulings.

Refusing to consider the figures from the amended tax returns was an abuse of discretion. The superior court expressly gave Frederickson the chance to resubmit

---

[38]     (...continued)
into evidence. At the time of the final check, identified exhibits which have not been offered for admission but which the court has previously ordered placed in the clerk's custody shall be returned to the appropriate party, unless otherwise ordered by the court.").

[39]     *See, e.g.*, Alaska R. Evid. 103(a) (requiring evidentiary ruling to affect "a substantial right of the party" for court to find error).

evidence if genuinely needed to rebut Hackett's proposed calculations. Frederickson submitted the amended returns for this purpose, asserting that the original versions of these returns (which had been introduced at the May 22, 2019 hearing) misstated his income. In other words, the amended returns were submitted for the precise purpose that the superior court had previously allowed. The difference is not insignificant: using the figures from the amended returns reduces Frederickson's annual child support obligation by over $800 for periods after 2019, when he owed support for two children, and by approximately $1,000 for the 2015-2019 period when he owed support for all three children.[40] We therefore reverse the superior court's decision to not consider the amended tax returns and remand for a reevaluation of Frederickson's child support obligation after considering the validity and import of the amended tax returns.

**C.    We Affirm The Superior Court's Rulings When Calculating Child Support Except For Its Treatment Of Frederickson's Retirement Contributions.**

The final category of Frederickson's challenges concerns the superior court's child support calculations. Frederickson argues that the court erred in two ways: (1) failing to deduct retirement contributions from his income when calculating support; and (2) determining his income and his deduction for health insurance premiums by using five-year averages.

**1.    Retirement deductions**

When determining a parent's income for child support purposes, Rule 90.3 directs the superior court to deduct from gross income "mandatory contributions to a

---

[40]    To calculate these amounts, we performed the same calculations as the superior court using the income figures Frederickson provided for 2017 and 2018.

retirement or pension plan."[41] The rule also provides a deduction for "voluntary contributions to a retirement or pension plan or account in which the earnings are tax-free or tax-deferred," but the deduction is limited to "7.5% of the parent's gross wages and self-employment income."[42]

Frederickson argued before the superior court that contributions made to his retirement account by his painting business, an S corporation half-owned by him, should be deducted from his income when calculating his child support obligation. The superior court rejected that argument, stating that "[Frederickson]'s corporation claimed these contributions as a business expense" and that Frederickson testified at the May 22 hearing "that he made no individual contribution." Instead the court *added* the $10,000 retirement contributions in 2017 and 2018 to Frederickson's income when calculating child support. Frederickson argues this decision was wrong, asserting that because "he is the employer making the contribution on behalf of himself using his income distribution . . . , he is entitled to include up to a 7.5% retirement deduction for [those] tax years." Hackett defends the superior court's decision by arguing that the retirement contributions for 2017 and 2018 "would be legitimate deductions . . . if they had been made" but maintains that the court found they were not in fact made.

The court found that Frederickson's business "claimed these contributions as a business expense" and that Frederickson "made no individual contributions." These findings are not clearly erroneous because they are consistent with exhibits, including tax returns, showing that Frederickson's business contributed to a retirement account on his behalf in these years. As noted above, Frederickson moved to submit amended tax returns for tax years 2017 and 2018, but the superior court refused to accept them into

---

[41]    Alaska R. Civ. P. 90.3(a)(1)(A)(v).

[42]    Alaska R. Civ. P. 90.3(a)(1)(B).

-21-                                                                    *1956*

evidence. Because we reverse that decision and direct the court to at least consider whether the amended returns should be accepted into evidence, the court's findings on whether retirement contributions were made and by whom could change. That is because the amendments to Fredrickson's tax returns appear to pertain specifically to retirement contributions. We express no opinion on whether or how the amended tax returns might affect the court's analysis on remand. Our decision here focuses solely on the documents that were admitted into evidence and considered by the superior court when it rejected Fredrickson's claim for a deduction.

How to apply Rule 90.3 to Frederickson's retirement contributions is complicated by the fact that Frederickson is both the part-owner and an employee of an S corporation, a special corporate form designed for businesses with 100 or fewer shareholders.[43] S corporations have certain tax advantages: for the most part they do not pay corporate income taxes;[44] instead profits or losses pass through directly to shareholders.[45] Furthermore, shareholders may receive a salary as an employee of the business as well as take corporate distributions.[46] The IRS permits S corporations to

---

[43] *See* 26 U.S.C. § 1361(a)(1), (b)(1); *see also S Corporations*, INTERNAL REVENUE SERV., https://www.irs.gov/businesses/small-businesses-self-employed/s-corporations (last accessed Aug. 10, 2022).

[44] *See* 26 U.S.C. § 1363(a).

[45] *See* 26 U.S.C. § 1366(a)-(b); *S Corporations*, INTERNAL REVENUE SERV., https://www.irs.gov/businesses/small-businesses-self-employed/s-corporations (last accessed Aug. 10, 2022).

[46] *See* 26 U.S.C. § 1368 (governing distributions); *S Corporation Employees, Shareholders and Corporate Officers*, INTERNAL REVENUE SERV., https://www.irs.gov/businesses/small-businesses-self-employed/s-corporation-employees-shareholders-and-corporate-officers (last accessed Aug. 10, 2022).

contribute to certain types of retirement plans for employees.[47] Frederickson's tax returns from 2017 and 2018 indicated that he took both corporate distributions and an employee salary, and that his S corporation made a $10,000 contribution to a simplified employee pension (SEP)[48] for Frederickson in each year.

The superior court apparently believed — perhaps because Fredrickson is a 50% owner of the corporation — that the corporation's retirement contributions for Fredrickson were neither mandatory nor voluntary retirement contributions under Civil Rule 90.3, and it therefore added the contributions to Fredrickson's annual income as an adjustment without allowing any deduction.

The commentary to Rule 90.3 explains that a parent's income from self-employment or ownership of a closely held corporation is "the gross receipts minus the ordinary and necessary expenses required to produce the income."[49] Frederickson points out that, if not for his painting business's contributions to his retirement, his income each year would have been $10,000 greater. Because the court included the $10,000 retirement account contributions when calculating Frederickson's income — i.e., adding

---

[47] *See Retirement Plan FAQs Regarding Contributions - S Corporation*, INTERNAL REVENUE SERV., https://www.irs.gov/retirement-plans/retirement-plan-faqs-regarding-contributions-s-corporation (last accessed Aug. 10, 2022) (explaining that shareholder of S corporation may not make contributions to tax-deferred retirement plan with corporate distributions but that employees of S corporation may make contributions of earned income to tax-deferred account and that S corporation may match employee's contributions).

[48] *See* INTERNAL REVENUE SERV., PUBLICATION 560: RETIREMENT PLANS FOR SMALL BUSINESS (2021) (explaining that SEP is a written plan that allows a small business to make contributions toward employees' retirement by contributing to a "traditional individual retirement arrangement (called a SEP-IRA) set up by or for each eligible employee" and maintained by a financial institution).

[49] Alaska R. Civ. P. 90.3 cmt. III.B (defining self-employment income).

it to the "gross receipts" from his business — it is unclear why a portion of these seemingly voluntary contributions (up to 7.5% of gross income) would not qualify for the deduction allowed by Rule 90.3. The fact that the corporation deposited these contributions directly into Frederickson's account does not seem disqualifying. It is common for large employers to deduct employees' voluntary retirement contributions from their paychecks and directly deposit these contributions into the employees' retirement accounts.[50] Further, the commentary to Rule 90.3 lists SEP-IRA accounts among the types of accounts that qualify for the voluntary contribution deduction.[51]

It is the apparent policy of Rule 90.3 to encourage parents to save money for retirement by allowing limited deductions of voluntary retirement contributions.[52] Had Frederickson personally contributed his wages to a qualifying retirement account, he would have been entitled to a deduction. The difference between having the corporation he owns (1) deposit money directly into a retirement account set up for him by the corporation and (2) pay him the same sum of money so he can personally deposit it in a retirement account seems immaterial in light of the apparent purpose of the deduction. Either way, it is a voluntary contribution towards his retirement.

---

[50] Whether Frederickson's approach to contributing to his retirement created tax advantages for him also would not seem disqualifying. The less he pays in taxes, the higher his income when calculating his child support. *See* Alaska R. Civ. P. 90.3(a)(1)(A)(I) (deducting income taxes from income when calculating parent's child support obligations).

[51] Alaska R. Civ. P. 90.3 cmt. III.D.1.

[52] Alaska R. Civ. P. 90.3 cmt. III.D ("Voluntary contributions, up to the limit stated in the rule, are also a deduction if the earnings on the retirement account or plan are tax-free or tax-deferred. . . . Some examples of plans and accounts that qualify for the voluntary contribution are: those qualified under the Internal Revenue Code . . . such as a traditional IRA, Roth IRA, SEP-IRA . . . .").

For that reason it was error to deny Frederickson a deduction for voluntary retirement contributions solely because the contribution was made by the corporation.[53] We therefore remand for the superior court to reexamine Frederickson's claim for a retirement deduction in light of our opinion and, potentially, the additional documents that Frederickson sought to admit.

###        2.        Calculating income and health insurance deductions using five-year averages

Frederickson argues the superior court erred by deciding to calculate his income and deductions for child-support purposes by using a five-year average. The court ruled that using a five-year average was appropriate because Frederickson had a fluctuating income. Frederickson himself agreed in the parties' settlement agreement to calculate child support using a five-year average of his income, and Frederickson again agreed to this approach in briefing following the 2018 custody trial. The court decided, in its April 2020 order setting child support, that it would also use figures averaging Frederickson's deductions over the same period.

The commentary to Rule 90.3 acknowledges that determining income may be difficult "when the obligor has had very erratic income in the past," explaining that courts faced with these situations "may choose to average the obligor's past income over several years."[54] "Whether to average a parent's income" in such a situation is in the superior court's discretion,[55] and we have regularly held the court's decision to do so

---

[53]        Our decision is limited to the precise facts of this case, and we express no opinion on how Rule 90.3's voluntary retirement contribution deduction may apply to different fact patterns.

[54]        Alaska R. Civ. P. 90.3 cmt. III.E.

[55]        *Limeres v. Limeres*, 320 P.3d 291, 297 & n.22 (Alaska 2014).

when faced with fluctuating income is not an abuse of discretion.[56] The record shows that Frederickson's income has fluctuated over the years, so the superior court's decision to use a five-year average for income and deductions was not manifestly unreasonable.[57]

The same is true for Frederickson's argument that the court should have calculated the deduction for his health insurance premiums using the most recent year in light of inflation. The superior court specifically denied this request, calling the five-year average "a more accurate depiction of [Frederickson's] actual expenses." Rule 90.3 allows deduction of health insurance premiums when calculating income,[58] and the logic that permits the superior court to calculate income using a multi-year average applies with equal force to deductions like health insurance premiums.

## V.    CONCLUSION

For the reasons explained above we VACATE the superior court's ruling denying consideration of Frederickson's amended tax returns for years 2017 and 2018 to determine income and the ruling denying Frederickson a deduction for retirement contributions. We AFFIRM all other rulings and REMAND for additional proceedings consistent with this opinion.

---

[56]    *E.g.*, *Keturi v. Keturi*, 84 P.3d 408, 412-13 (Alaska 2004).

[57]    *Mitchell v. Mitchell*, 370 P.3d 1070,1076 (Alaska 2016).

[58]    Alaska R. Civ. P. 90.3(a)(1)(F).

# In the Supreme Court of the State of Alaska

| | |
|---|---|
| **Jack Fredrickson,**<br>                    Appellant,<br><br>            v.<br><br>**Allison Hackett,**<br>                    Appellee.<br>Trial Court No. **1SI-12-00009CI** | Supreme Court No. **S-17786**<br><br>**Order**<br>Petition for Rehearing<br><br>Date of Order: **3/22/2023** |

Before:     Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices

On consideration of the Petition for Rehearing filed on **12/19/2022**, and the response filed on **1/9/2023**,

**IT IS ORDERED**:

1.      The Petition for Rehearing is **GRANTED IN PART**.

2.      MO&J No. 1934, issued on 12/7/2022, is **WITHDRAWN**.

3.      MO&J No. 1956, is issued on this date in its place with the following changes beginning at page 20:

Frederickson argued before the superior court that contributions made to his retirement account by his painting business, an S corporation half-owned by him, should be deducted from his income when calculating his child support obligation.  The superior court rejected that argument, stating that "[Frederickson]'s corporation claimed these contributions as a business expense" and that Frederickson testified at the May 22 hearing "that he made no individual contribution."  Instead the court *added* the $10,000 retirement contributions in 2017 and 2018

to Frederickson's income when calculating child support. Frederickson argues this decision was wrong, asserting that because "he is the employer making the contribution on behalf of himself using his income distribution . . . , he is entitled to include up to a 7.5% retirement deduction for [those] tax years."

Hackett defends the superior court's decision by arguing that the retirement contributions for 2017 and 2018 "would be legitimate deductions . . . if they had been made" but maintains that the court found they were not in fact made. ~~This is not accurate.~~

The court found that Frederickson's business "claimed these contributions as a business expense" and that Frederickson "made no individual contributions." These findings are not clearly erroneous because they are consistent with exhibits, including tax returns, showing that Frederickson's business contributed to a retirement account on his behalf in these years. As noted above, Frederickson moved to submit amended tax returns for tax years 2017 and 2018, but the superior court refused to accept them into evidence. Because we reverse that decision and direct the court to at least consider whether the amended returns should be accepted into evidence, the court's findings on whether retirement contributions were made and by whom could change. That is because the amendments to Fredrickson's tax returns appear to pertain specifically to retirement contributions. We express no opinion on whether or how the amended tax returns might affect

the court's analysis on remand. Our decision here focuses solely on the documents that were admitted into evidence and considered by the superior court when it rejected Fredrickson's claim for a deduction.

How to apply Rule 90.3 to Frederickson's retirement contributions is complicated by the fact that Frederickson is both the part-owner and an employee of an S corporation, a special corporate form designed for businesses with 100 or fewer shareholders.[1] S corporations have certain tax advantages: for the most part they do not pay corporate income taxes;[2] instead profits or losses pass through directly to shareholders.[3] Furthermore, shareholders may receive a salary as an employee of the business as well as take corporate distributions.[4] The IRS permits S corporations to contribute to certain types of retirement

---

[1] *See* 26 U.S.C. § 1361(a)(1), (b)(1); *see also S Corporations*, INTERNAL REVENUE SERV., https://www.irs.gov/businesses/small-businesses-self-employed/s-corporations (last accessed Aug. 10, 2022).

[2] *See* 26 U.S.C. § 1363(a).

[3] *See* 26 U.S.C. § 1366(a)-(b); *S Corporations*, INTERNAL REVENUE SERV., https://www.irs.gov/businesses/small-businesses-self-employed/s-corporations (last accessed Aug. 10, 2022).

[4] *See* 26 U.S.C. § 1368 (governing distributions); *S Corporation Employees, Shareholders and Corporate Officers*, INTERNAL REVENUE SERV., https://www.irs.gov/businesses/small-businesses-self-employed/s-corporation-employees-shareholders-and-corporate-officers (last accessed Aug. 10, 2022).

plans for employees.[5] Frederickson's tax returns from 2017 and 2018 indicated that he ~~takes~~took both corporate distributions and an employee salary, and that his S corporation made a $10,000 contribution to a simplified employee pension (SEP) [6] for Frederickson in each year.

The superior court apparently believed — perhaps because Fredrickson is a 50% owner of the corporation — that the corporation's retirement contributions for Fredrickson were neither mandatory nor voluntary retirement contributions under Civil Rule 90.3, and it therefore added the contributions to Fredrickson's annual income as an adjustment without allowing any deduction.

The commentary to Rule 90.3 explains that a parent's income from self-employment or ownership of a closely held corporation is "the gross receipts minus the ordinary and necessary expenses

---

[5] *See Retirement Plan FAQs Regarding Contributions - S Corporation*, INTERNAL REVENUE SERV., https://www.irs.gov/retirement-plans/retirement-plan-faqs- regarding-contributions-s-corporation (last accessed Aug. 10, 2022) (explaining that shareholder of S corporation may not make contributions to tax-deferred retirement plan with corporate distributions but that employees of S corporation may make contributions of earned income to tax-deferred account and that S corporation may match employee's contributions).

[6] *See* INTERNAL REVENUE SERV., PUBLICATION 560: RETIREMENT PLANS FOR SMALL BUSINESS (2021) (explaining that SEP is a written plan that allows a small business to make contributions toward employees' retirement by contributing to a "traditional individual retirement arrangement (called a SEP-IRA) set up by or for each eligible employee" and maintained by a financial institution).

required to produce the income."[7]  Frederickson points out that, if not for his painting business's contributions to his retirement, his income each year would have been $10,000 greater.   Because the court included the $10,000 retirement account contributions when calculating Frederickson's income — i.e., adding it to the "gross receipts" from his business — it is unclear why a portion of these seemingly voluntary contributions (up to 7.5% of gross income) would not qualify for the deduction allowed by Rule 90.3. The fact that the corporation deposited these contributions directly into Frederickson's account does not seem disqualifying.  It is common for large employers to deduct employees' voluntary retirement contributions from their paychecks and directly deposit these contributions into the employees' retirement accounts. [8] Further, the commentary to Rule 90.3 lists SEP-IRA accounts among the types of accounts that qualify for the voluntary contribution deduction.[9]

It is the apparent policy of Rule 90.3 to encourage parents to save money for retirement by allowing limited deductions of

---

[7]     Alaska R. Civ. P. 90.3 cmt. III.B (defining self-employment income).

[8]     Whether Frederickson's approach to contributing to his retirement created tax advantages for him also would not seem disqualifying.   The less he pays in taxes, the higher his income when calculating his child support.   *See* Alaska R. Civ. P. 90.3(a)(1)(A)(I) (deducting income taxes from income when calculating parent's child support obligations).

[9]     Alaska R. Civ. P. 90.3 cmt. III.D.1.

voluntary retirement contributions.[10] Had Frederickson personally contributed his wages to a qualifying retirement account, he would have been entitled to a deduction. The difference between having the corporation he owns (1) deposit money directly into a retirement account set up for him by the corporation and (2) pay him the same sum of money so he can personally deposit it in a retirement account seems immaterial in light of the apparent purpose of the deduction. Either way, it is a voluntary contribution towards his retirement.

For that reason it was error to deny Frederickson a deduction for voluntary retirement contributions solely because the contribution was made by the corporation.[11] We therefore remand for the superior court to ~~determine whether,~~ reexamine Frederickson's claim for a retirement deduction in light of our opinion and ~~other facts in the record, to allow the deduction, not to exceed the 7.5% limit imposed by Rule 90.3(a)(1)(B).~~ ~~,~~ potentially, the additional documents that Frederickson sought to admit.

---

[10] Alaska R. Civ. P. 90.3 cmt. III.D ("Voluntary contributions, up to the limit stated in the rule, are also a deduction if the earnings on the retirement account or plan are tax-free or tax-deferred. . . . Some examples of plans and accounts that qualify for the voluntary contribution are: those qualified under the Internal Revenue Code . . . such as a traditional IRA, Roth IRA, SEP-IRA . . . .").

[11] Our decision is limited to the precise facts of this case, and we express no opinion on how Rule 90.3's voluntary retirement contribution deduction may apply to different fact patterns.

Entered at the direction of the court.

Clerk of the Appellate Courts

_____
Meredith Montgomery

cc:    Supreme Court Justices
       Trial Court Clerk - Sitka
       Publishers (MOJ No. 1934, 12/7/2022)

Distribution:

Frederickson, Jack
McGowan, James W.